**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re GRUPO TELEVISA SECURITIES
LITIGATION

Civil Action No. 1:18-cv-01979-LLS

<u>CLASS ACTION</u>

**DEFENDANTS' MEMORANDUM OF LAW IN**
**SUPPORT OF THEIR MOTION TO DISMISS THE**
**AMENDED COMPLAINT**

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1000

Herbert M. Wachtell
Ben M. Germana
David B. Anders

*Attorneys for Defendants*

*Of Counsel*

Dated: October 15, 2018

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF ALLEGATIONS AND FACTS.....................................................5

ARGUMENT ...............................................................................................................14

POINT I       PLAINTIFF FAILS TO PLEAD PARTICULARIZED
ALLEGATIONS OF ANY BRIBE BY TELEVISA OR ANY OF
ITS SUBSIDIARIES OR PERSONNEL AS REQUIRED BY THE
REFORM ACT AND RULE 9(b). ...........................................................15

      A.    The conclusory testimony of the criminally culpable Torneos
executive Burzaco, and Plaintiff's related allegations, lack
the required particularity............................................................17

      B.    Plaintiff's allegations regarding Televisa's accounting-related
disclosures are wholly conclusory and speculative. ....................26

POINT II      EVEN IF PLAINTIFF HAD ADEQUATELY ALLEGED THAT
TELEVISA BRIBED FIFA OFFICIALS, THERE WOULD
HAVE BEEN NO DUTY TO DISCLOSE IT BECAUSE IT
WOULD NOT RENDER ANY MATERIAL STATEMENT
FALSE OR MISLEADING.....................................................................31

POINT III     THE AMENDED COMPLAINT FAILS TO RAISE A STRONG
INFERENCE OF SCIENTER ................................................................36

POINT IV     PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION
20(a). ........................................................................................................44

CONCLUSION............................................................................................................45

# TABLE OF AUTHORITIES

## <u>Cases</u>

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ...................................................................................... *passim*

*Barrett* v. *PJT Partners, Inc.*,
  No. 16 Civ. 2841, 2017 WL 3995606 (S.D.N.Y. Sept. 8, 2017) ............................... 34

*Bay Harbour Mgmt. LLC* v. *Carothers*,
  282 F. App'x 71 (2d Cir. 2008) ................................................................................ 28

*Carpenters Pension Tr. Fund of St. Louis* v. *Barclays PLC*,
  750 F.3d 227 (2d Cir. 2014) ..................................................................................... 16

*Chill* v. *General Elec. Co.*,
  101 F.3d 263 (2d Cir. 1996) ..................................................................................... 40

*City of Brockton Ret. Sys.* v. *Avon Prods., Inc.*,
  No. 11 Civ. 4665, 2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ............................ 43

*City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*,
  752 F.3d 173 (2d Cir. 2014) ..................................................................................... 31

*Cohen* v. *Stevanovich*,
  722 F. Supp. 2d 416 (S.D.N.Y. 2010) ...................................................................... 45

*ECA & Local 134 IBEW Joint Pension Trust of Chi.* v. *JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) ................................................................................ 15, 38

*Feasby* v. *Industri-Matematik Int'l Corp.*,
  No. 99 Civ. 8761, 2000 WL 977673 (S.D.N.Y. July 17, 2000) ............................... 27

*Fries* v. *N. Oil & Gas, Inc.*,
  285 F. Supp. 3d 706 (S.D.N.Y. 2018) ...................................................................... 43

*Goel* v. *Bunge, Ltd.*,
  820 F.3d 554 (2d Cir. 2016) ....................................................................................... 5

*Granite Partners, L.P.* v. *Bear, Stearns & Co.*,
  17 F. Supp. 2d 275 (S.D.N.Y. 1998) ........................................................................ 20

*Horoshko* v. *Citibank, N.A.*,
  373 F.3d 248 (2d Cir. 2004) ..................................................................................... 45

*In re Axis Capital Holdings Ltd. Sec. Litig.*,
  456 F. Supp. 2d 576 (S.D.N.Y. 2006) .................................................................. 15, 16

*In re Banco Bradesco S.A. Secs. Litig.*,
  277 F. Supp. 3d 600 (S.D.N.Y. 2017) ...................................................................... *passim*

*In re Bausch & Lomb, Inc. Sec. Litig.*,
  592 F. Supp. 2d 323 (S.D.N.Y. 2008) ...................................................................... 43

*In re Braskem S.A. Secs. Litig.*,
    246 F. Supp. 3d 731 (S.D.N.Y. 2017) ................................................ 15, 32, 34, 35

*In re Citigroup, Inc. Sec. Litig.*,
    330 F. Supp. 2d 367 (S.D.N.Y. 2004) ................................................................ 31

*In re FBR Secs. Litig.*,
    544 F. Supp. 2d 346 (S.D.N.Y. 2008) ................................................................ 33

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
    No. 15 Civ. 6369, 2018 WL 1449206 (S.D.N.Y. Mar. 23, 2018) ......................... 44

*In re JP Morgan Chase Sec. Litig.*,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005) ................................................................ 16

*In re Lions Gate Entm't Corp. Sec. Litig.*,
    165 F. Supp. 3d 1 (S.D.N.Y. 2016) .................................................................... 32

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006) ............................................................ 32, 33

*In re PetroChina Co. Ltd. Sec. Litig.*,
    120 F. Supp. 3d 340 (S.D.N.Y. 2015) ............................................................ 26, 33

*In re ProShares Trust Sec. Litig.*,
    728 F.3d 96 (2d Cir. 2013) ............................................................................ 29, 34

*In re Sanofi Sec. Litig.*,
    155 F. Supp. 3d 386 (S.D.N.Y. 2016) ............................................................ 29, 44

*In re Sierra Wireless, Inc. Securities Litig.*,
    482 F. Supp. 2d 365 (S.D.N.Y. 2007) ................................................................ 27

*In re Time Warner Inc. Sec. Litig.*,
    9 F.3d 259 (2d Cir. 1993) .................................................................................. 34

*In re VEON Ltd., Sec. Litig.*,
    No. 15 Civ. 8672, 2017 WL 4162342 (S.D.N.Y. Sept. 19, 2017) ......................... 33

*In re Yukos Oil Co. Sec. Litig.*,
    No. 04 Civ. 5243, 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) ..................... 16, 24

*Kalnit* v. *Eichler*,
    264 F.3d 131 (2d Cir. 2001) .............................................................................. 38

*Kramer* v. *Time Warner*, Inc.,
    937 F.2d 767 (2d Cir. 1991)) ............................................................................... 5

*Lipow* v. *Net 1 UEPS Techs, Inc.*,
    131 F. Supp. 3d 144 (S.D.N.Y. 2015) ............................................................ 31, 45

*Novak* v. *Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ..................................................................... *passim*

*Plumbers & Steamfitters Local 773 Pension Fund* v. *Canadian Imperial Bank of Commerce*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010) ................................................................ 42

*Pope Invs. II LLC* v. *Deheng Law Firm*,
No. 10 Civ. 6608, 2011 WL 5837818 (S.D.N.Y. Nov. 21, 2011) ........................................... 39

*Rombach* v. *Chang*,
355 F.3d 164 (2d Cir. 2004) ........................................................................................ 16, 27

*Roth* v. *Jennings*,
489 F.3d 499 (2d Cir. 2007) ................................................................................................ 29

*S. Cherry St., LLC* v. *Hennessee Grp. LLC*,
573 F.3d 98 (2d Cir. 2009) ........................................................................................... 36, 40

*San Leandro Emergency Med. Grp. Profit Sharing Plan* v. *Philip Morris Cos.*,
75 F.3d 801 (2d Cir. 1996) ................................................................................................... 42

*Slayton* v. *Am. Express Co.*,
604 F.3d 758 (2d Cir. 2010) ................................................................................................ 43

*Stratte-McClure* v. *Morgan Stanley*,
776 F.3d 94 (2d Cir. 2015) ........................................................................................ 37, 38, 39

*Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital Inc.*,
531 F.3d 190 (2d Cir. 2008) ................................................................................................ 42

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ................................................................................................... *passim*

## <u>Statutes</u>

15 U.S.C. § 78u-4 ....................................................................................................... *passim*

Fed. R. Civ. P. 9(b) .................................................................................................... *passim*

SEC Rule 229.304 ............................................................................................................... 29

## <u>Other Authorities</u>

U.S. Securities and Exchange Commission Division of Corporation Finance, Financial
Reporting Manual, § 6830 .......................................................................................... 30

## PRELIMINARY STATEMENT

This totally irresponsible Class Action Amended Complaint alleging supposed securities fraud by Grupo Televisa, S.A.B. ("Televisa"), a leading Mexican corporation, and two of its executives, does not begin to satisfy the pleading requirements of either Rule 9(b) of the Federal Rules of Civil Procedure or the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 (the "Reform Act").

The purported gravamen of the Amended Complaint arises out of the Government's multifaceted investigation of violations of law involving broadcast rights to several World Cup soccer matches granted by the Fédération Internationale de Football Association ("FIFA"). Class Action Amended Complaint ("Compl.") ¶¶ 10-11.  As one aspect of the Government's investigations and proceedings, it determined that one Alejandro Burzaco, the head of an Argentine corporation unrelated to defendants, Torneos y Competencias S.A. ("Torneos"), had paid a bribe of $15 million to a FIFA executive, Julio Grondona (now deceased), to facilitate the award of 2026 and 2030 World Cup broadcast rights to certain Latin American corporations, including the present civil defendant Televisa.  Compl. ¶ 8.  The Government thereupon back in November 2015 entered into a plea agreement with Burzaco in exchange for his cooperation. *See* p. 8, *infra*.

Then, in November 2017, in a separate prosecution of three different defendants — wholly unrelated to Televisa or the 2026/2030 transaction discussed above, *see* Superseding Indictment, *United States* v. *Napout*, No. 15-cr-252 (E.D.N.Y. June 14, 2017), Dkt. No. 604 — the Government, introducing Burzaco as a trial witness upon direct examination, elicited from him the following testimony:  "Among the three partners, we made an agreement to distribute the burden of paying $15 million in bribes" to "Julio Grondona," and that the referenced partners

(along with Torneos itself) were "Teleglobo from Brazil and Televisa from Mexico."  Ex. A (Transcript of Criminal Trial at 489:9-15, *Napout*, No. 15-cr-252 (Nov. 15, 2017)).[*]  As will be shown, this wholly conclusory testimony — devoid of the who, what, when, where, and how required by Rule 9(b) and the Reform Act — is the entire predicate for this elaborate 67-page Amended Complaint claiming securities fraud on the part of Televisa for not previously having "disclosed" its supposed participation in a bribery scheme.  And this, notwithstanding that — despite the passage of just under three years since the time of the Burzaco plea and cooperation agreement — the Government has instituted *no* proceeding of any nature against Televisa or *any* of its personnel.

In the face of this manifestly insufficient predicate for satisfying its pleading obligations under Rule 9(b) and the Reform Act, the Amended Complaint attempts to cover up its failings by a series of totally irresponsible falsehoods and omissions.  By way of example only:

- It represents to this Court that a previous Criminal Information against Torneos stated Televisa was a "co-conspirator."  Compl. ¶ 49.  But it does not.  *See* p. 9, *infra*.

- It "omits to disclose" that Burzaco's allocution at the time of his guilty plea a year earlier makes *no* mention of any involvement by Televisa in his bribery scheme.  *See* p. 9, *infra*.

- It cites to an exhibit received in evidence in the trial at which Burzaco testified of a Torneos ledger of payment receipts indicating a $7.25 million payment received by Torneos from Televisa's subsidiary Mountrigi as supposed corroboration of a criminal scheme (Compl. ¶¶ 53-54, 63), but

---

[*]    All exhibits cited in this memorandum are attached to the accompanying Declaration of David B. Anders submitted herewith (and are cited herein as "Ex. __").

"omits to disclose" to this Court that the author of the ledger explicitly testified upon that trial that the ledger included "legitimate payments and transactions."  *See* p. 10, *infra*.

- It alleges that two of the three defendants in the trial in which Burzaco testified were convicted (Compl. ¶ 15), yet "omits to disclose" that the third — whose guilt rested upon Burzaco's testimony — was *acquitted* by the jury.  *See* p. 10, *infra*.

- In a totally outrageous attempt to prejudice the proceedings, it cites the murder of a Televisa cable executive while cycling in Mexico City in November 2017 (Compl. ¶¶ 62, 130) — as if that had anything to do with soccer, FIFA, bribery, or any other issue involved here.  *See* p. 11, *infra*.

- It repeatedly claims that two Televisa executives "stepp[ed] down" from their positions with the company "within hours" of a *New York Times* "exposé" of FIFA bribery as set forth in the Criminal Information (Compl. ¶¶ 12-13, 59-60, 154) — as if there were some connection between the two events — whereas the Criminal Information in question had been filed some ten months previous and had been widely publicized at that time. *See* pp. 11-12 *infra*.

- It concocts out of thin air allegations of a supposed elaborate scheme on the part of Televisa to doctor its books, engage in "skimming," and the like to conceal the $7.25 million payment to Torneos (Compl. ¶¶ 25, 44, 64-69), without a scintilla of factual back-up — not even so much as a single "confidential informant" — that such payment was not in fact fully

recorded on Televisa's books as part of a *legitimate* business transaction between the two companies.  *See* pp. 12-13, *infra*.

- It speculates without an iota of particularity or support in fact that a 2018 regulatory filing by Televisa setting forth certain weaknesses in its internal financial controls — which filing was explicit that no such weaknesses were connected to *any* improper activities or resulted in inaccuracies in any previously filed financial statement, *see* pp. 13-14, *infra* — supposedly had anything to do with FIFA or any bribe by Televisa. Compl. ¶¶ 138-43.  It likewise "omits to disclose" that that very filing set forth under "Legal Proceedings" — in response to the original complaint filed in this action — that outside counsel had long since investigated the circumstances of Televisa's acquisition of the 2026 and 2030 World Cup rights and had concluded that Televisa had made no payment to any FIFA person or knew of or condoned any such payment.  *See* pp. 13-14, *infra*.

- It further accuses Televisa at length of supposed violations of law in announcing a recent change of auditors without disclosing any "disagreements" with the outgoing auditors (Compl. ¶¶ 27-28, 145-51) — notwithstanding express provisions of law that specify that any such disclosure would not be required until the yet-to-be forthcoming 2018 Form 20-F, which is not due until six months from now in April 2019. *See* p. 14, *infra*.

Under controlling precedents, this securities fraud complaint calls out for dismissal on multiple grounds.  *First*, the Amended Complaint fails to plead with the particularity required by

the Reform Act and Rule 9(b) that Televisa or the individual defendants engaged in bribery. *See* Point I, *infra*. *Second*, there would in any event be no duty to disclose any such hypothetical bribe, because it would not render any statement allegedly made by defendants materially false or misleading. *See* Point II, *infra*. *Third*, the Amended Complaint fails to plead facts sufficient to give rise to the strong inference of scienter required for private securities fraud complaints to survive dismissal — either as to Televisa itself, or either of the two individual defendants. *See* Point III, *infra*. Each of these grounds independently compels dismissal. And because the Amended Complaint's claim of primary violation fails, its Section 20(a) claim for control-person liability against the individual defendants perforce fails as well. *See* Point IV, *infra*.

## STATEMENT OF ALLEGATIONS AND FACTS[*]

As has been widely publicized, the United States Attorney's Office for the Eastern District of New York, commencing at least by 2012,[**] has conducted a wide-ranging investigation into questions of bribery in connection, *inter alia*, with the grant of broadcast rights by FIFA of various of the quadrennial soccer World Cups. Compl. ¶¶ 10-11. Numerous persons

---

[*]     As permissible under Second Circuit precedent upon a motion pursuant to Rule 12(b)(6), in addition to setting forth plaintiff's allegations, this Statement of Allegations and Facts will include references to "statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *In re Banco Bradesco S.A. Secs. Litig.*, 277 F. Supp. 3d 600, 629 (S.D.N.Y. 2017) (quoting *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). It will also include "matters of which judicial notice may be taken, including documents that both 'bear on the adequacy' of SEC disclosures and are 'public disclosure documents required by law.'" *Banco Bradesco*, 277 F. Supp. 3d at 629 (quoting *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) and *Kramer* v. *Time Warner*, Inc., 937 F.2d 767, 773-74 (2d Cir. 1991)).

[**]     *See* Complaint, *United States* v. *Warner*, No. 13-cr-402 (E.D.N.Y. Nov. 20, 2012), Dkt. No. 1.

and entities have either been criminally charged as a result of such investigations[*] or have entered into deferred or non-prosecution agreements.[**]   *See also* Compl. ¶ 10.

FIFA itself is a Swiss entity.  Compl. ¶ 42.  And again, as has been widely publicized, Swiss prosecutors have conducted similar investigations and proceedings.  Compl. ¶ 10.

Televisa is a multinational mass media company incorporated in Mexico and headquartered in Mexico City.  Compl. ¶ 35; Ex. B (Grupo Televisa, S.A.B., Annual Report on Form 20-F ("2017 Form 20-F"), at 1 (Apr. 30, 2018)).  Televisa is the largest mass media company in the Spanish-speaking world, and has interests in television production and broadcasting, programming, direct-to-home satellite services, publishing and publishing distribution, cable television, radio production, show business, feature films, and Internet portals.  Compl. ¶ 35.  Televisa distributes television content through broadcast channels in Mexico and in more than 50 other countries.  Compl. ¶ 39.  American Depositary Receipts for Televisa trade on the New York Stock Exchange under the ticker symbol "TV."  Compl. ¶¶ 1, 35.

Mountrigi Management Group Ltd. ("Mountrigi") is a wholly owned subsidiary of Televisa incorporated in Switzerland.  Compl. ¶ 6; Ex. C (2017 Form 20-F, Ex. 8.1, at 4 (Dec. 31, 2017)).  Mountrigi, formerly known as Videoserpel Ltd., contracts for television licensing rights, as has been publicly disclosed for years.  *See, e.g.*, Ex. D (2017 Form 20-F, Ex. 4.18 (Amended and Restated 2011 Mexico License Agreement, dated as of February 28, 2011, by and among Univision Communications Inc. and Videoserpel, Ltd.)); Ex. E (2017 Form 20-F, Ex. 4.19 (Amendment to Amended and Restated 2011 Mexico License Agreement, dated as of July 1, 2015, by and among

---

[*]      *See, e.g.*, Superseding Indictment ¶¶ 29-58, *Napout*, No. 15-cr-252 (June 14, 2017), Dkt. No. 604 (naming three defendants and 29 co-conspirators).

[**]     *See, e.g.*, Deferred Prosecution Agreement, *United States* v. *Torneos y Competencias, S.A.*, No. 16-cr-634 (E.D.N.Y. Dec. 13, 2016), Dkt. No. 4.

Univision Communications Inc. and Mountrigi Management Group Limited (f/k/a Videoserpel, Ltd.))).

Emilio Fernando Azcárraga Jean III ("Azcárraga") is the controlling shareholder and Executive Chairman of the Board of Televisa.  Compl. ¶ 36; Ex. B (2017 Form 20-F, at 103). Azcárraga served as Televisa's Chief Executive Officer from 1997 through 2018.  Compl. ¶ 36. On October 26, 2017, Televisa announced the appointment of new co-Chief Executive Officers, effective January 1, 2018.  Ex. F (Grupo Televisa, S.A.B., Report of Foreign Issuer on Form 6-K (Oct. 26, 2017 Form 6-K), at 2 (Oct. 26, 2017)).  That announcement noted that Azcárraga would serve as Executive Chairman of the Board and would continue to have direct responsibility for Televisa's soccer business.  Ex. F (Oct. 26, 2017 Form 6-K, at 2).

Salvi Rafael Folch Viadero ("Folch") is the former Chief Financial Officer of Televisa. Compl. ¶ 37.  Folch has also served as Televisa's Vice President of Strategic Planning and as Corporate Vice President of Telecommunications, and currently serves as head of Televisa's cable division and is a member of Televisa's Board of Directors.  Compl. ¶ 37; Ex. G (Grupo Televisa, S.A.B., Report of Foreign Issuer on Form 6-K ("Nov. 29, 2017 Form 6-K"), at 2 (Nov. 29, 2017)).

The Amended Complaint alleges that Miguel Diez de Urdanivia ("Diez") and Mauricio Simón Fajer ("Simón") are "executive[s]" at Mountrigi.  Compl. ¶ 47.  Plaintiff does not identify any source for its allegation that they were Mountrigi "executives," and they are not listed as such in publicly available sources.  *See, e.g.*, *Mountrigi Management Group Ltd.*, Moneyhouse, https://www.moneyhouse.ch/en/company/mountrigi-management-group-ltd-12650154181/management?activeOnly=true&page=0 (last visited Oct. 9, 2018).

Torneos is a marketing company incorporated in Argentina.  Compl. ¶ 7.  Sports marketing executive Alejandro Burzaco ("Burzaco") previously served as the CEO of Torneos. Compl. ¶¶ 7, 45.  After being indicted in connection with the FIFA bribery scheme in May 2015 (Indictment, *Napout*, No. 15-cr-252 (May 20, 2015), Dkt No. 1), he pled guilty in November 2015 to charges of racketeering, wire fraud and money laundering conspiracy and entered into a plea agreement with the Government that required him to testify on the Government's behalf. Transcript of Guilty Plea, *Napout*, No. 15-cr-252 (Nov. 14, 2015), Dkt. No. 312-2; Ex. A (Transcript of Criminal Trial at 595-97, *Napout*, No. 15-cr-252 (Nov. 15, 2017)).

The Amended Complaint alleges that, over a number of years, Burzaco and his "business partners" paid some $160 million of bribes to FIFA officials.  Compl. ¶ 15.  The Amended Complaint alleges that there was a $15 million payment in April 2013 by Burzaco to a FIFA official named Julio Grondona (now deceased) that included in part funds supplied by Televisa's subsidiary Mountrigi.  Compl. ¶¶ 7-8, 53.

That $15 million Burzaco/Torneos payment — as to which Televisa/Mountrigi is supposed to have contributed $7.25 million of the funds — is alleged to have been paid in 2013 to induce FIFA to enter into contracts for broadcast rights for the 2026 and 2030 World Cups: for Torneos itself as to Argentina, Uruguay, and Paraguay; for Televisa for Mexico and Latin America ex-Brazil; and for Teleglobo for Brazil.  Compl. ¶¶ 8, 53, 58.

In connection with the Torneos deferred prosecution agreement, the Government Criminal Information set forth that Burzaco of Torneos paid "millions of dollars in bribe and kickback payments" to a high-ranking FIFA official, "at times with the assistance of one or more representatives of Broadcasting Company Affiliate A."  Information ¶ 34, *United States* v. *Torneos y Competencias S.A.*, No. 16-cr-634 (E.D.N.Y. Dec. 13, 2016), Dkt. No. 9.  While that

allegation does not mention Televisa or Mountrigi by name, nevertheless it was readily identifiable that "Broadcasting Company Affiliate A" was a reference to Mountrigi.  And as the Amended Complaint alleges, "at times" means in connection with obtaining the 2026 and 2030 World Cup rights.  Compl.  ¶ 53. But notably absent from the Information is any allegation that Televisa or Mountrigi *knowingly* rendered any such "assistance."

And — to the contrary — whereas the Amended Complaint alleges that Televisa and Mountrigi were branded by the Government as "co-conspirators" (Compl. ¶¶ 11, 49), that allegation is not true.  That Government Criminal Information, while labeling "soccer officials" and at least two entities as "co-conspirator[s]," does not so designate Televisa, Mountrigi, or any of their personnel.  Information ¶¶ 24, 30, 43, *Torneos y Competencias S.A.*, No. 16-cr-634, Dkt. No. 9.  Nor are they named as co-conspirators in the criminal indictment to which Burzaco pled guilty.  Indictment, *Napout*, No. 15-cr-252 (May 20, 2015), Dkt. No. 1.

Moreover, as noted, a year before the filing of that Criminal Information, Burzaco entered a plea of guilty and set forth a four-page allocution of his culpable conduct — which allocution makes no mention whatsoever of any involvement of Televisa, Mountrigi, or any of their personnel.  Transcript of Guilty Plea at 26-30, *Napout*, No. 15-cr-252 (Nov. 16, 2015).

Nevertheless, two years later at trial of an unrelated prosecution, the Government, introducing Burzaco as a witness upon direct examination, asked preliminary questions which elicited from Burzaco the following testimony:  "Among the three partners, we made an agreement to distribute the burden of paying $15 million in bribes" to "Julio Grondona," and that the referenced partners (along with Torneos) were "Teleglobo from Brazil and Televisa from Mexico."  Ex. A (Transcript of Criminal Trial, at 489:9-15 (Nov. 15, 2017)).  That wholly conclusory — and

wholly uncorroborated — testimony is the predicate for the Amended Complaint's claim of securities fraud by Televisa and the individual defendants.

And, while the Amended Complaint points to an exhibit introduced at the trial of a Torneos ledger of payment receipts evidencing a $7.25 million payment received by Torneos from Mountrigi as supposed corroboration of a criminal scheme (Compl. ¶¶ 8, 19, 46), the Amended Complaint fails to disclose that the author of that ledger explicitly testified at that trial that the ledger included "legitimate payments and transactions."  Ex. A (Transcript of Criminal Trial, at 2173:21, No. 15-cr-252 (Nov. 29, 2017)).

So while — putting aside Burzaco's entirely conclusory claim — there was evidence of a $7.25 million payment from Mountrigi to a Torneos entity, there is not even a single particularized factual allegation that anyone at Televisa or Mountrigi was aware that any of that $7.25 million was being used as part of a bribe — if it was.  Not Messrs. Azcárraga or Folch, albeit named as defendants in this litigation.  Not Messrs. Diez or Simón, alleged to be executives of Mountrigi, the company acquiring the licenses.  Compl. ¶ 47.

Rather, the Amended Complaint is totally devoid of the "who, what, when, where and how" as to any participation in bribery by Televisa, Mountrigi, or any of their respective personnel.

Moreover, while the Amended Complaint alleges that two of the defendants in the unrelated criminal trial were convicted (Compl. ¶ 15), it fails to mention that the third defendant — the case against whom rested almost entirely upon Burzaco's testimony — was *acquitted*. Jury Verdict, *Napout*, No. 15-cr-252 (Dec. 26, 2017), Dkt. No. 874.

Further lacking from the Amended Complaint is any single instance of any person from Televisa or Mountrigi making any statement that would indicate any involvement in Burzaco's bribery scheme: no "Confidential Informant No. 1" purporting to cite to pertinent information.

Nor is there reference to any single document or e-mail from the files of Torneos or otherwise indicating any such incriminating involvement.

And, finally and compellingly, in the three-and-a-half years that have passed since the Government's initial indictment of Burzaco (*see* Indictment, *Napout*, No. 15-cr-252 (May 20, 2015), Dkt. No. 1) — and, as of the date of this Memorandum, just under three years since Burzaco's plea of guilty and promise of cooperation, and nearly two years since the time of the Criminal Information — no proceeding of any nature has been brought against Televisa, Mountrigi, or any of their personnel (including Messrs. Azcárraga or Folch) by any government: not our Government; and not the Swiss Government, which has also been actively involved in FIFA prosecutions.

But rather than accept that there is no factual basis to bring securities fraud claims here, Plaintiff attempts to mask the Amended Complaint's glaring deficiencies by inventing things.  Thus:

1.  The Amended Complaint references that a cable executive of Televisa while cycling in Mexico City was murdered.  Compl. ¶ 18.  But there is nothing whatsoever to connect that violent crime to FIFA, bribes, the World Cup, or anything having to do with this case.

2.  The Amended Complaint trumpets that there was a *New York Times* "exposé" on October 26, 2017 that "implicated Televisa and Mountrigi in the FIFA bribery scheme," and that "within hours" Televisa announced that Azcárraga and Folch were "stepping down."  Compl. ¶¶ 59-60.  But:  (a) the so-called "exposé," in identifying Televisa and Mountrigi based on the Government Information's reference to "Broadcasting Company Affiliate A" was hardly "new news," but merely repeated information that *had already been published by Reuters ten months previously* (Compl. ¶ 108); (b) the very disclosure upon which Plaintiff relies makes clear that Azcárraga was not "stepping down" but would serve as Executive Chairman of Televisa's Board

of Directors and, as before, continue to have *direct responsibility for Televisa's soccer business* — the antithesis of some scarlet letter for having facilitated soccer bribes, (*see* Ex. F (Oct. 26, 2017 Form 6-K, at 2)); and (c) Folch, too, was at that time appointed to be Televisa's Vice President of Strategic Planning, is currently head of Televisa's cable division, and as Corporate Vice President of Telecommunications continues to be a member of Televisa's Board of Directors (again, hardly emblematic of an executive being punished for wrongdoing). *Id.*; *see also* Ex. G (Nov. 29, 2017 Form 6-K, at 2). And the new positions would not be assumed for months — the start of the new year. *See* Exs. F & G.

3. The Amended Complaint then engages in wholesale invention on the part of counsel as to how Televisa "could have" concealed the supposed bribery scheme by tampering with its accounting system. Compl. ¶¶ 24-25. To show the purely fictional — and unsupported — nature of these allegations, it is worth quoting them in their entirety:

> 24. Indeed, to pull off the bribery scandal, Televisa had to suspend internal controls to: (1) transfer the funds from the Company's accounts to co-conspirators to pay the bribes; (2) avoid detection of the real purpose for those fund transfers; and (3) conceal the nature of those transactions from later discovery. Of the two major ways in which Televisa could have executed its bribery scheme (i.e., "on-book" or "off-book" transactions), Televisa chose the latter fraud method because it posed the least risk of detection and the transactions could more readily be concealed. An "onbook" scheme would have meant that the cash (i.e., checks or wire transfers) exited the entity fraudulently, but would be recorded on Televisa's books so that an audit trail would exist. An "offbook" scheme, on the other hand, enabled Televisa to surreptitiously carry out the bribery scheme because the cash would never actually be reported to the entity, leaving no apparent audit trail, and the fraud would thus require a forensic accounting investigation to unearth the details underlying the illegal bribery scheme.

> 25. Televisa used an asset misappropriation scheme to execute its bribe payments. Specifically, Televisa employed a variation of "skimming," the process by which cash is removed

> from the entity before it enters the accounting system. Among the
> most common asset misappropriation schemes are accounts
> receivable schemes involving write-off of the receivables in
> connection with revenues, even though the customer actually paid
> off the outstanding accounts receivable balances.

Thus, counsel tells us that this was a "skimming" scheme in which millions of dollars were

siphoned off; divines that there was one of two ways in which it "could have" been accomplished;

that Televisa chose the second; and the like — all to conceal the claimed bribery payment.

But what is wholly *lacking* from this exposition is a single iota of factual support that

anything of this nature ever actually occurred: that the $7.25 million transfer payment was *not* in

fact fully and accurately reflected upon Televisa's books.  Lacking is so much as even a

proverbial "Confidential Informant" professing any knowledge of Televisa's accounting of that

payment.  Nothing.  What we are presented with is simply made up of whole cloth — the fertile

imagination of Plaintiff's counsel.

4.  The Amended Complaint speculates that a disclosure by Televisa in January 2018 of

weaknesses in certain internal financial controls signifies that it paid bribes in 2013.  Compl. ¶¶

33-42.  Again, in its wholly unsupported zeal to tie this disclosure to supposed bribes, the

Amended Complaint overlooks the fact that the very disclosures upon which it relies supports no

such theory: to the contrary, the disclosures were explicit that those weaknesses had *not* resulted

in any "improper activities" or "inaccuracies in or adjustments to [Televisa's] previously filed

financial statements" — and that outside counsel had long since investigated the 2026 and 2030

FIFA awards and concluded that there was no credible evidence of wrongful conduct on the part

of Televisa or any of its personnel.  Ex. B (2017 Form 20-F, at 25, 137).  Thus, Televisa's 2017

Form 20-F, upon which the Amended Complaint explicitly relies (Compl. ¶¶ 70, 142), set forth:

> [O]utside counsel long previously investigated the circumstances
> surrounding Televisa's acquisition of the Latin American media
> rights for the 2026 and 2030 FIFA World Cups and uncovered *no*

> *credible evidence that would form the basis for liability for*
> *Televisa or for any executive, employee, agent or subsidiary*
> *thereof.*  In particular, *Televisa itself made no payment to any FIFA*
> *person and in no way knew of, or condoned, any payment* by any
> third party to any FIFA person.

Ex. B (2017 Form 20-F, at 137) (emphasis added).  There is and could be no allegation that that disclosure was false.  And it squarely refutes Plaintiff's attempt to divine bribery from a disclosure of certain particular weaknesses in internal controls without the slightest suggestion that any such "weakness" had anything whatsoever to do with FIFA.  Compl. ¶¶ 26-28.

5.  Finally, Plaintiff irresponsibly accuses Televisa of violating law in announcing a recent change of auditors, from PwC to KPMG, without disclosing any "disagreements" with the outgoing auditors (Compl. ¶¶ 27-28, 145-51).  But Plaintiff's accusation is baseless.  Because Televisa is a foreign issuer, the governing law specifies that any such disclosure is not required until the yet-to-be forthcoming 2018 Form 20-F, not due until April *2019* — six months from now.  *See* p. 30, *infra*.

## ARGUMENT

Private securities fraud actions can "abusively . . . impose substantial costs on companies and individuals whose conduct conforms to the law."  *Tellabs, Inc*. v. *Makor Issues & Rights, Ltd*., 551 U.S. 308, 313 (2007).  Dissatisfied with that state of affairs, Congress in 1995 enacted the Private Securities Litigation Reform Act, which set forth stringent pleading requirements applicable to such claims supplementing those previously found in Rule 9(b).

In particular, the Reform Act requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C.

§ 78u-4(b)(1).  The Reform Act further requires that the complaint "state with particularity *facts* giving rise to a strong inference that the defendant acted with" scienter.  15 U.S.C. § 78u-4(b)(2) (emphasis added).

Further, "[b]ecause claims under Section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder sound in fraud, they are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."  *In re Banco Bradesco*, 277 F. Supp. 3d at 629.  *See also, e.g.*, *ECA & Local 134 IBEW Joint Pension Trust of Chi.* v. *JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009); *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 750 (S.D.N.Y. 2017).  Specifically, where, as here, there are claims of securities fraud stemming from a failure to disclose bribes, Rule 9(b) requires the complaint to "plead the 'who, what, when, where, and how' of the alleged transactions."  *In re Banco Bradesco*, 277 F. Supp. 3d at 632.  *See also In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 586 (S.D.N.Y. 2006) (finding allegations of underlying scheme "too conclusory to satisfy the requirements of Rule 9 and the PSLRA").

## POINT I

### PLAINTIFF FAILS TO PLEAD PARTICULARIZED ALLEGATIONS OF ANY BRIBE BY TELEVISA OR ANY OF ITS SUBSIDIARIES OR PERSONNEL AS REQUIRED BY THE REFORM ACT AND RULE 9(b).

To survive a motion to dismiss, the Amended Complaint "must satisfy Rule 9(b), . . . which requires that 'the circumstances constituting fraud . . . shall be stated with particularity.'"  *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  In addition, the Reform Act requires that, for all allegations made on information and belief, "the complaint must 'state with particularity all facts on which that belief is formed.'"  *Novak* v. *Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000) (quoting 15 U.S.C. § 78u-4(b)(1)).  The allegations of supposed wrongdoing and failure to disclose in the Amended Complaint are based upon information and belief (Compl. at p. 2) and are therefore subject to that heightened standard.  Thus, under the

Reform Act, a plaintiff "'must do more than say that the statements . . . were false and misleading; [it] must *demonstrate with specificity* why and how that is so.'"  *Carpenters Pension Tr. Fund of St. Louis* v. *Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014) (quoting *Rombach* v. *Chang*, 355 F.3d 164, 174 (2d Cir. 2004)) (emphasis added).

Because the purported bribe by defendants forms a critical "part of the 'circumstances constituting fraud,'" such bribe "must be pleaded with particularity."  *In re Banco Bradesco*, 277 F. Supp. 3d at 632 (quoting Fed. R. Civ. P. 9(b)); *see also id.* at 631-32 ("Because the gravamen of the amended complaint is that a series of unlawful bribery schemes . . . rendered the challenged statements false or misleading, the Court must determine at the outset whether Plaintiff had adequately alleged any or all of those schemes.").  Where a plaintiff's allegations are "too conclusory to satisfy the requirements of Rule 9 and the [Reform Act]," that deficiency "necessarily infects each of plaintiffs' claims," necessitating dismissal.  *In re Axis Capital Holdings*, 456 F. Supp. 2d at 585-86 ("If [plaintiff's] complaint fails to allege facts which would establish such an illegal scheme, then the securities law claims premised on the *nondisclosure* of the alleged scheme are fatally flawed."); *see also In re Yukos Oil Co. Sec. Litig.*, No. 04 Civ. 5243, 2006 WL 3026024, at *14 (S.D.N.Y. Oct. 25, 2006) ("[T]he Complaint fails to plead with particularity sufficient facts demonstrating that Yukos' tax strategy violated Article 40 of the Russian Federation Tax Code."); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 632 (S.D.N.Y. 2005) ("Plaintiffs have failed to allege with particularity that JPM Chase or its agents violated these statutes."); *cf. Novak* v. *Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000) ("In order to survive at this stage, the complaint must state with particularity sufficient facts to support the belief that the 'Box and Hold' inventory was of limited value . . . .").

To meet this obligation to plead particularized facts regarding defendants' purported bribe, Plaintiff must plead the "who, what, when, where, and how" of the claimed underlying bribery. *In re Banco Bradesco*, 277 F. Supp. 3d at 632 (internal quotation marks omitted). Plaintiff's allegations fall far short of that bar.

> **A.     The conclusory testimony of the criminally culpable Torneos executive Burzaco, and Plaintiff's related allegations, lack the required particularity.**

The Amended Complaint is liberally sprinkled with references to the criminal probe and prosecutions stemming from bribery of FIFA officials by others. *E.g.*, Compl. ¶¶ 10, 11, 48, 49. But *this* securities fraud case is about *Televisa and the individual defendants* — and all Plaintiff can muster is the wholly conclusory testimony of the criminally culpable Alejandro Burzaco, the former head of Torneos, an organization unrelated to Televisa or to Televisa's subsidiary Mountrigi. Plaintiff claims that, while testifying in a criminal trial about three other defendants unrelated to Televisa (or its subsidiary or any of their personnel), or the 2026 or 2030 World Cup, Burzaco supposedly "identified Televisa as a company that *paid bribes to Grondona in Zurich* to secure its media rights to the World Cups in 2026 and 2030." Compl. ¶ 126 (emphasis added).

Tellingly, Plaintiff does not actually quote even a single word of Burzaco's testimony. That testimony, upon which the entire Amended Complaint depends, does *not* say that Televisa or any of its subsidiaries or personnel paid any bribe to any FIFA official, let alone provide the particularized facts required to sustain a securities fraud complaint against Televisa under Rule 9(b) and the Reform Act. On November 14, 2017, the Government elicited the following testimony from Burzaco on direct examination:

Q     Have you ever worked in partnership with other sports media marketing companies?

A  Yes, sir.

Q  What are some examples of companies you worked with?

A  We had many partners in different parts of the world, such as Fox Sports in the U.S.; Televisa from Mexico; Media Pro from Spain; TV Globo from Brazil; Full Play from Buenos Aires, Argentina; Traffic, which is based in Brazil, but was with a branch in Miami.

  We were partners with Grupo Clarin in Argentina. We had many partners and many different joint ventures in many parts of the world.

*  *  *

Q  To your knowledge which, if any of those companies, was involved in paying bribes to secure contracts for media rights to soccer?

A  To my knowledge, with exception of Clarin, all of the companies.

Ex. A (Transcript of Criminal Trial, at 239:2-22, *Napout*, 15-cr-252 (Nov. 14, 2017)).

The next day, the Government upon direct examination elicited from Burzaco the following additional testimony:

Q  Did you have other business to tend to while you were in Zurich?

A  Yes, sir.

Q  What business was that?

A  I was in Zurich and Torneos was in an alliance with Teleglobo from Brazil and Televisa from Mexico, the Montinea (phonetic) Group from Mexico, seeking to acquire from FIFA the TV and internet and radio rights for World Cup 2026 and FIFA World Cup 2030, for exclusivity and for the territories of Brazil in the case of Teleglobo and Latin America, for the case of Televisa, Torneos partnership.

Q  Were you and your partners able to acquire those rights?

A  Yes, sir.

Q  And what agreement, if any, was reached in connection with the payment of bribes for those rights?

18

A       *Among the three partners, we made an agreement to distribute the burden of paying $15 million in bribes.*

Q       To whom?

A       To Julio Grondona.

Q       And when you say you and your partners which partners are you referring to?

A       Teleglobo from Brazil and Televisa from Mexico.

Q       Were $15 million, in fact, paid to Julio Grondona?

A       Yes, sir.

Q       And where did the money end up for Julio Grondona?

A       The money for Julio Grondona ended up in a sub-account at a Swiss bank in name of Julius Berg.

Ex. A (Transcript of Criminal Trial, at 488:19-489:20, *Napout*, No. 15-cr-252 (Nov. 15, 2017)) (emphasis added).  In other words, Televisa did *not* directly pay any bribe to anybody, but supposedly agreed to share "the burden" of a purported bribe being made by Burzaco.

In lieu of quoting the actual testimony, the Amended Complaint trumpets that "the prosecution witness [Burzaco] testified over two days about Televisa's involvement in the $15 million bribe."  Compl. ¶ 128.  But since the few lines of testimony quoted above constitute the totality of any such "involvement" testimony over such "two days," Plaintiff's claim is, to put it mildly, misleading.  Moreover, because this testimony was entirely beside the point of the case before the jury — and Televisa was obviously not a party to the proceeding — it was never subjected to cross-examination.

Moreover, critically absent from those few lines of testimony are the requisite particularized facts about the "who, what, when, where, and how" of the alleged Televisa bribe. Who at Televisa (or its subsidiary Mountrigi) engaged in this "involvement"?  What did he or

she do?  Who reached such agreement with Burzaco to "share the burden" of the illicit payment?
When and where did he or she do so?  How?  Was Televisa's portion of the Burzaco to
Grondona bribe paid in cash?  By check?  By wire transfer?  And crucially, what are the "facts"
showing that anyone at Televisa or Mountrigi *knew* that Burzaco was using the $7.25 million as
part payment of a bribe to Grondona —  if Burzaco did.  Is there even a single particularized
factual allegation of an e-mail, a memo, or some other writing or anything else reflecting
anything of the sort?  Not in the Amended Complaint.  Plaintiff's conclusory pleading does not
remotely suffice under the required standard.  *See, e.g.*, *In re Banco Bradesco*, 277 F. Supp. 3d at
632.  And even apart from that patent failure, although Plaintiff portrays Burzaco as a "star
witness" and touts the conviction of two of the defendants at the trial in which Burzaco testified
(Compl. ¶ 15), Plaintiff omits to disclose that the third defendant, the case against whom rested
almost entirely upon Burzaco's testimony, was *acquitted*.  Jury Verdict, *Napout*, No. 15-cr-252
(Dec. 26, 2017), Dkt. No. 874.

    Indeed, the law is clear that even where — unlike here — there is a "confidential
informant" at the defendant company who is in a position to know the facts, a plaintiff must still
plead particularized facts as to the "who, what, when, where, and how" of the claimed
misconduct.  *See Novak*, 216 F.3d at 314 (holding that while the identity of a relied-upon
confidential informant need not be revealed to satisfy the pleading requirements, plaintiffs must
still "supply sufficient specific facts to support their allegations").  These requirements do not
magically go away just because the identity of the relied-upon source, here, the criminally
culpable Burzaco, is known.  *See Granite Partners, L.P.* v. *Bear, Stearns & Co.*, 17 F. Supp. 2d
275, 287 (S.D.N.Y. 1998) (holding witness's deposition testimony to "lack[] the specificity
required under Rule 9(b)" where the testimony failed to provide "the time and place the

statement was made, as well as the identification of the speaker" who made claimed statement).

Simply put, whether dealing with a confidential source (Confidential Informant #1) purporting

knowledge of wrongful conduct or a known source (Burzaco) purporting such knowledge, the

requirement that the facts of the wrongdoing be pleaded with particularity applies with full force.

And, while some light on such subjects is provided by a ledger exhibit introduced during

that trial indicating a payment of $7.25 million from Mountrigi to a Torneos entity (Compl. ¶

19), this exhibit hardly qualifies as corroborating evidence.  To the contrary, the ledger's author

was explicit in his trial testimony that such ledger included "legitimate payments."  Ex. A

(Transcript of Criminal Trial, at 2173:21, *Napout*, No. 15-cr-252 (Nov. 29, 2017)).  Thus, at

bottom, all the Amended Complaint alleges is that Mountrigi made a $7.25 million payment to

Torneos, Compl. ¶ 46, and that, at some unspecified time, some unspecified actor — presumably

an employee of Torneos' subsidiary — transferred $15 million to a Swiss bank account

"maintained for Grondona's benefit," Compl. ¶ 54.  There is no allegation that anyone at

Televisa (or Mountrigi) made, authorized, or even knew of any such subsequent transfer of funds

by Torneos to any FIFA official.  Absent is any alleged action by Televisa, or its subsidiaries or

personnel, beyond Mountrigi simply making a payment to *Torneos*, a sports "marketing

company" (Compl. ¶ 7) — an action entirely consistent with a legitimate transaction between

two Latin American companies in the sports media business.

These allegations do not support Plaintiff's conclusory allegation that Mountrigi's

payment to Torneos was "for this [$15 million] bribe," Compl. ¶ 53.  There is not a single

particularized, or even non-conclusory, allegation that Mountrigi, Televisa, or anyone at either

company knew or had reason to know that such payment was to be reused as a bribe — if it was.

Not Messrs. Azcárraga or Folch, albeit named as defendants in this litigation.  Not Messrs. Diez

or Simón, alleged to be executives of Mountrigi, the company acquiring the licenses.  Compl. ¶ 47.

Instructive here is Judge Woods' decision for the Southern District last year in another securities fraud case concerning allegations of foreign bribes, *In re Banco Bradesco*, 277 F. Supp. 3d 600 (S.D.N.Y. 2017).  There, plaintiff alleged securities fraud based on nondisclosure by a bank of a bribery scheme to procure over $1 billion of improper tax benefits.  The alleged scheme involved three parties: (1) the defendant Brazilian bank (and its officers); (2) an outside Brazilian lawyer intermediary; and (3) a Brazilian government official.  Specifically, it was alleged that the governmental official caused the intermediary to present the improper tax scheme to the bank, for which the bank concededly paid the intermediary lawyer millions of dollars that wound up in the hands of the government official in return for his approval of the improper tax plan.  *Id.* at 613.  The bank's CEO and other executives were criminally indicted in connection with the scheme.  *Id*. at 619.[*]

But despite those allegations — and notwithstanding the criminal indictment — the court found that the securities fraud claims were required to be dismissed for most of the claimed bribery period, because plaintiff "failed adequately to allege that anyone at [the bank] was aware that they were involved in any unlawful dealings" during that period.  *Id*. at 632.  Among other things, that was so, the Court explained, because the complaint failed to set forth with particularity that, during that period, there was any "contact or communication" between the bank, on the one hand, and the Brazilian government official who wound up with money from the intermediary lawyer, on the other.  *Id*.  The Court rejected as insufficient plaintiff's "circumstantial allegations" that "[Banco Bradesco] made a large number of payments to [the

---

[*]    As to one of the executives only, the criminal charges were ultimately dismissed by a Brazilian court.  *In re Banco Bradesco*, 277 F. Supp. 3d at 636.

lawyer]," and that plaintiff had alleged "the specific amount of the bribe payments [the bank] made to [the government official] (via [the lawyer])." *Id.* at 633-34.  As the Court explained, there were no "particularized examples of such transactions provided by Plaintiff" other than examples where the company made payments to the *Brazilian lawyer*, who "then passed [them] on . . . to [the government official]." *Id.* at 632.  Therefore, Plaintiff's bribery allegations failed to "satisfy Rule 9(b)'s requirement to plead the 'who, what, when, where, and how' of the alleged transactions," *id.*, as well as "the particularity requirements of . . . the [Reform Act]." *Id.* at 634.

The allegations here fall far short even of the allegations the Court rejected as a matter of law in *Bradesco*.  Here, Burzaco's testimony regarding Televisa's purported involvement is purely conclusory.  That conclusory testimony likewise does not purport to allege any "contact or communication" between Televisa (or its subsidiaries or personnel) and any bribe recipient at any time, let alone the "particularized examples of such transactions" that would be required.  *Id.* The reference in the ledger to a $7.25 million payment from Mountrigi to a Torneos entity is of no use to Plaintiff — even putting aside that the ledger contained "legitimate" payments — because Plaintiff has not set forth particularized facts that Televisa made such payment to any FIFA official, or even directed any such payment to be made, or knew that Burzaco would be using those funds to pay a bribe (if he did).  Indeed here — unlike in *Bradesco*, where the plaintiff was at least able to allege that defendants were indicted for years'-long payment of millions of dollars in *subsequent* bribes to the same Brazilian government official, *id.* at 619 — what is claimed is wrongful participation in a single bribe, and Plaintiff cannot even allege that anyone at the supposed bribe-funds-supplier Mountrigi (let alone anyone at Televisa) was ever at any time charged by any government with so much as jaywalking.

Nor is the woeful insufficiency of the Amended Complaint rescued by its reference to the Torneos Criminal Information.  Compl. ¶ 50.  As noted, the Amended Complaint misrepresents that, in that Information, "the government identified two unnamed co-conspirator corporations," which Plaintiff identifies as Televisa and Mountrigi.  Compl. ¶ 49.  That is not the case.  The Torneos Information does not identify these entities as "co-conspirators" at all, nor does either the Government's May 2015 original Indictment (listing 25 co-conspirators) or its June 2017 Superseding Indictment (listing 29 co-conspirators).  Indictment ¶¶ 44-69, *Napout*, No. 15-cr-252 (May 20, 2015); Superseding Indictment ¶¶ 29-58, *Napout*, No. 15-cr-252 (June 14, 2017), Dkt. No. 604.  Rather, the Criminal Information focuses on the actions of Burzaco and Torneos, mentioning only "the assistance of one or more representatives of Broadcasting Company Affiliate A, including Broadcasting Company Executive #1."  Compl. ¶ 50; Information ¶ 34, *Torneos y Competencias S.A.*, No. 16-cr-634.  But the Criminal Information did not state that Televisa, Mountrigi, or any of their executives *knowingly* did so — as distinct from having unwittingly "assisted" in simply providing dollars that Burzaco chose to use to pay a bribe.  Accordingly, the non-specific statements in the Criminal Information — which did not even accuse Televisa, Mountrigi, or any of their respective personnel of wrongdoing — do not supply the particularized allegations necessary that Televisa (or its subsidiary or personnel) engaged in wrongdoing.  *In re Banco Bradesco*, 277 F. Supp. 3d at 632; *In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024, at *14; *cf. ATSI Commc'ns*, 493 F.3d at 106 (holding that complaint contained only "generalized allegation[s]" of defendants' alleged wrongdoing and failed to allege such conduct "with particularity").

Still further afield are Plaintiff's allegations concerning what the Amended Complaint mischaracterizes as an "exposé" in the *New York Times* "on Televisa's connection to the bribery

scandal," which purportedly led Messrs. Azcárraga and Folch to step down from their positions at Televisa "within hours" of this *New York Times* "exposé."  Compl. ¶¶ 12, 13.  The Amended Complaint itself acknowledges that this was very old news.  Precisely the same information had already been widely "exposed" by *Reuters* at the very time of the filing of the Torneos Information — *ten months earlier*.  *See* Ex. H (Mica Rosenberg, *Televisa affiliate surfaces in widening FIFA bribery probe*, Reuters (Dec. 16, 2016)); Compl. ¶ 108.  There was then zero reason to believe that Televisa's announcement of some corporate shuffling had anything to do causally with the coincidence of a *New York Times* story that same day.

Nevertheless, Plaintiff repeatedly mischaracterizes the *New York Times* article as an "exposé" that "implicated Televisa and Mountrigi in the FIFA bribery and placed it squarely with the likes of Burzaco and Torneos in illegally obtaining rights to World Cup tournaments," Compl. ¶¶ 12, 59, 123, 160, and insinuates that the article is somehow connected to Televisa's announcement that Azcárraga and Folch were "stepping down."  Compl. ¶¶ 59-60.  But the strained inferences Plaintiff seeks to draw are refuted by the text of the article itself, which contains no particularized facts concerning bribery by Televisa or Mountrigi, but rather states that Mountrigi was "never named in any of the charging documents," even though "[t]he United States has charged more than 40 individuals and businesses with a range of corruption-related crimes."  Ex. I (Tariq Panja, *How Did a Tiny Swiss Company Quietly Secure Valuable World Cup TV Rights?*, N.Y. Times (Oct. 26, 2017)).

And as for Azcárraga and Folch supposedly "stepping down" as a result of this article, the disclosure upon which Plaintiff relies itself makes clear that Azcárraga "will continue to lead the long term strategy of the firm as Executive Chairman of the Board" — and indeed "continue to have *direct responsibility for Televisa's soccer business*":  the very antithesis of what someone

involved with soccer bribes would be made responsible for.  Ex. F (Oct. 26, 2017 Form 6-K, at 2).  The same announcement similarly notes that Folch "will become Vice President of Strategic Planning" and also remain on the board of directors — again, hardly what one would do with an executive responsible for bribery.  *Id.  See also In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 357 (S.D.N.Y. 2015) (announcement that company was investigating three officials, and that all three were resigning, insufficient to give rise to inference of corruption).  And even these changes of responsibilities would not take place for months — with the start of the new year.  *See* Exs. C & D.  Incriminating indeed?

Finally, Plaintiff's unadorned reference to the murder of a Televisa executive while bike riding in Mexico City (Compl. ¶¶ 18, 62, 130) — as if that had anything to do with bribery or FIFA — is hogwash.  Suffice to say that Plaintiff does not even attempt to allege any facts — let alone with particularity — connecting this violent crime to anything involved in this action.

### B.     Plaintiff's allegations regarding Televisa's accounting-related disclosures are wholly conclusory and speculative.

Plaintiff's allegations attempting to connect disclosures concerning Televisa's internal controls over financial reporting to Plaintiff's bribery allegations fare no better.  Not only are they wholly conclusory, they are conjured out of thin air and rest entirely upon fictional speculation.

Without a shred of support, Plaintiff simply pretends that Televisa's 2018 disclosures of weaknesses in its internal controls over financial reporting "related to the payment of bribes." Compl. ¶ 66.  Plaintiff asserts that these disclosures "were described in innocuous terms," *id.*, an obvious acknowledgement that the disclosures do not remotely involve Plaintiff's bribery allegations.  And Plaintiff's speculation that Televisa's disclosure about such deficiencies "came

about directly as a result of the public disclosure of Televisa's bribery payments to FIFA officials in the fall of 2017," Compl. ¶ 68, is once again made up of whole cloth.

Plaintiff dreams up a story behind Televisa's accounting disclosures that lacks any basis in the disclosures themselves, in any other source cited by Plaintiff, or in fact.  Compl. ¶¶ 133-52.  For example, Plaintiff refers to the deficiency disclosed by Televisa regarding "accounting for certain revenue and related accounts receivable in [the] cable companies and content division."  Compl. ¶ 140.  Plaintiff's imaginative reading of that disclosure is remarkable:

> That means one or more individuals was empowered to write off an account receivable . . . but still apply the proceeds to an illicit bank account for the ultimate purpose of paying a bribe without a corresponding entry on the Company's books.  Again what this meant in practical terms is that defendants authorized one or more individuals to carry out the transfers of money to make bribery payments and then to cover-up or conceal the nature of the payments to avoid detection.

Compl. ¶ 140.  Plaintiff refers to these supposed "off-book transactions" as a "skimming scheme" through which "millions of dollars were being siphoned off through the exploitation of the Company's material weaknesses in internal controls."  Compl. ¶¶ 24, 44.  *See* pp. 12-13, *supra*.

Fatally for this fanciful theory, no rational reading of Televisa's disclosures supports these allegations, nor do any well-pleaded facts.  This "skimming" theory is "supported" only by Plaintiff's own say-so, rather than any "specific facts in support of [plaintiff's] belief[s]" as required by the Reform Act.  *Rombach* v. *Chang*, 355 F.3d 164, 172 (2d Cir. 2004); *see also In re Sierra Wireless, Inc. Securities Litig.*, 482 F. Supp. 2d 365, 375 (S.D.N.Y. 2007) (dismissing claim where "plaintiffs suppl[ied] no facts whatsoever to support their allegations," as required to "satisfy the heightened pleading requirements"); *Feasby* v. *Industri-Matematik Int'l Corp.*, No. 99 Civ. 8761, 2000 WL 977673, at *6 (S.D.N.Y. July 17, 2000) (dismissing claim that

"appear[ed] to be nothing more than speculation" because plaintiffs "fail[ed] to state any facts to support their allegations").  Moreover, Plaintiff alleges nothing to suggest that the alleged $7.25 million payment, or any other payment, was not in fact duly recorded on Televisa's books as part of a legitimate business transaction.  Plaintiff has failed to "plead with particularity sufficient facts to support [its] beliefs" as to the well-hidden meaning of these disclosures.  *Novak*, 216 F.3d at 313-14; *see also Bay Harbour Mgmt. LLC* v. *Carothers*, 282 F. App'x 71, 76 (2d Cir. 2008) (summary order) (affirming dismissal under Rule 9(b) and the Reform Act where "there [was] no support for the specific allegation" that a disclosure was false).  Indeed, Plaintiff has pleaded no such facts at all.

Plaintiff also fails to account for disclosures in the very same filings upon which Plaintiff relies that directly contradict these baseless theories.  Plaintiff quotes extensively from Televisa's 2017 Form 20-F, including the auditor's opinion that it had identified certain deficiencies in Televisa's accounting controls.  Compl. ¶ 142.  But contrary to Plaintiff's made-up story that accounts receivable were being written off to secretly fund bank accounts to pay bribes, the very disclosure specified that the deficiencies in question did *not* involve any "improper activities" or result in any "inaccuracies" in any previously-filed financial statement.  Ex. B (2017 Form 20-F, at 25).  And the auditor's opinion itself states, in the sentence immediately preceding the one about "deficiencies" quoted by Plaintiff, that "the consolidated financial statements referred to above present fairly, in all material respects, the financial position of the Company as of December 31, 2017 and 2016, and the results of their operations and their cash flows for each of the three years in the period ended December 31, 2017 . . . ." — and then goes on to specify that the auditor had considered the "weaknesses" in Televisa's internal controls over financial reporting and they did not "affect [the auditor's] opinion on these consolidated financial statements."  Ex. B (2017 Form 20-F,

at F-2).  Plaintiff having incorporated by reference this filing into the Amended Complaint, this Court may of course consider this content, omitted by Plaintiff in its misleading description of the auditor's opinion.  *See generally Roth* v. *Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

And Plaintiff's attempt to divine bribery from these accounting-related disclosures fails to account for another disclosure in the very same document — that outside counsel had long since investigated the matter and concluded that *there was no bribery*.  Thus, the same 2017 Form 20-F explicitly disclosed in response to the filing of the original complaint in this very action that:

> [O]utside counsel long previously investigated the circumstances surrounding Televisa's acquisition of the Latin American media rights for the 2026 and 2030 FIFA World Cups and uncovered no credible evidence that would form the basis for liability for Televisa or for any executive, employee, agent or subsidiary thereof.  In particular, Televisa itself made no payment to any FIFA person and in no way knew of, or condoned, any payment by any third party to any FIFA person.  Televisa also notes that no proceedings have been initiated against it by any governmental agency.

Ex. B (2017 Form 20-F, at 137).

Plaintiff does not (and cannot) allege that this disclosure — *i.e.*, that outside counsel investigated and reached this conclusion — was false.  And that specific disclosure refutes any attempt to glean from accounting-related disclosures elsewhere in the same filing the existence of bribery.  *See, e.g.*, *In re ProShares Trust Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013) ("we review documents holistically and in their entirety").  Simply put, Plaintiff cannot overcome the "alternative nonfraudulent inference" that the internal investigation "did not uncover any unlawful activity of a material proportion."  *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 407 (S.D.N.Y. 2016).

Finally, Plaintiff spends pages describing SEC Rule 229.304, *Changes in and disagreements with accountants on accounting and financial disclosure*, supposedly to support

the conspiracy theory that Televisa must have engaged in bribery because it did not disclose the nature of "disagreements" that led Televisa to announce that it was transitioning to a new auditor beginning with the audit of its financial results for the year ended December 31, 2018.  Compl. ¶¶ 143-51.  Claiming that Televisa was supposedly required to have disclosed the nature of such disagreements but wrongfully failed to do so, Plaintiff then grasps at straws, surmising that "the most plausible explanation for Televisa's failure to comply with Item 304" is that Televisa's auditor was "unwilling to turn a blind eye to Televisa's failure to comply with required internal controls and to comply with laws prohibiting bribes."  Compl. ¶ 151.

Total, unadulterated nonsense.  Plaintiff's accusations rest upon pure and simple ignorance of the SEC Rules applicable to Televisa.  As a foreign issuer, Televisa's required disclosures are contained in Item 16F, *Change in Registrant's Certifying Accountant*, and are not called upon to be disclosed until the filing of its *annual* Form 20-F.  The SEC's Financial Reporting Manual makes this point clear:

> Foreign private issuers are required to provide disclosures in the event of a change in their independent accountants. The disclosure requirements are contained in Item 16F of Form 20-F. The required disclosures are substantially the same as those required for domestic issuers by [Item] 304. *However, the disclosures and related auditor's letter must be filed as part of the annual report on Form 20-F and any registration statements, rather than in a Form 8-K.*

U.S. Securities and Exchange Commission Division of Corporation Finance, Financial Reporting Manual, § 6830 (emphasis added).  Thus, Televisa has not been required to make the disclosures as to any such "disagreements" with auditors (should such exist) until Televisa's next annual report on Form 20-F — a document that is not due to be filed until six months from now, in April *2019*.

*      *      *

Plaintiff's allegations are a concoction of wholly conclusory statements, unadulterated fiction, wild speculation, and absurd conjecture.  They totally fail to allege sufficient particularized facts as required by the Reform Act, as well as the "who, what, when, where, and how" as required by Rule 9(b).  The Amended Complaint is required to be dismissed.

POINT II

**EVEN IF PLAINTIFF HAD ADEQUATELY ALLEGED THAT TELEVISA BRIBED FIFA OFFICIALS, THERE WOULD HAVE BEEN NO DUTY TO DISCLOSE IT BECAUSE IT WOULD NOT RENDER ANY MATERIAL STATEMENT FALSE OR MISLEADING.**

As shown in Point I, the Amended Complaint falls far short of adequately pleading that Televisa or any of its subsidiaries or their respective personnel bribed any FIFA official.  But even if one were to overlook that threshold dispositive defect and pretend that Plaintiff had sufficiently so alleged, the Amended Complaint would still fail because there would have been no duty to disclose any such purported bribe.

As the Second Circuit has recognized, "[c]ompanies do not have a duty to disclose uncharged, unadjudicated wrongdoing."  *City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) (internal quotation marks omitted).  *See also*, *e.g.*, *Lipow* v. *Net 1 UEPS Techs, Inc.*, 131 F. Supp. 3d 144, 168 (S.D.N.Y. 2015) ("A defendant does not have a duty 'to accuse itself of wrongdoing' . . . ."); *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) ("[T]he federal securities laws do not require a company to accuse itself of wrongdoing.").  Thus, even in a case where (unlike here) a company was criminally charged and pleaded guilty to a felony in federal court for participating in a "broad-ranging bribery scheme" of government officers, the company still "did not have a freestanding duty to disclose the bribery scandal, no matter how unseemly the scandal was and no matter how

31

significant the scandal would have been to the market." *In re Braskem S.A. Secs. Litig.*, 246 F. Supp. 3d 731, 752 (S.D.N.Y. 2017).

Rather, disclosure of bribes is "not required except where doing so [is] necessary to prevent the corporation's *other* statements from being misleading." *Id. See also*, *e.g.*, *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 469 (S.D.N.Y. 2006) (holding that "the securities laws do not impose a general duty to disclose corporate mismanagement or uncharged criminal conduct" and that disclosure is required only where failing to disclose "render[s] other statements misleading"); *In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016) (no duty to disclose SEC investigation).

And, *a fortiori*, that is the case here where an investigation by outside counsel had concluded that the company had *not* participated in any such wrongdoing.  But even if one were to hypothesize the contrary, that Televisa was a participant in the payment of a bribe to FIFA to assist in receiving 2026 and 2030 World Cup rights, that would not have rendered any statement alleged to have been made by Televisa or any individual defendant materially false or misleading.  Plaintiffs' various attempts to plead otherwise fail as a matter of law:

*First*, Plaintiff cites numerous statements made by Televisa or its personnel to the effect that the World Cup is an important event, that it is widely viewed, and that it contributes significantly to advertising revenues (and the like).  *See* Compl. ¶¶ 74, 80-83, 90-92, 100, 114, 117.  But even if Televisa had secured the rights to broadcast these events by bribe, none of these statements would be any less true: there is no claim that Televisa does not continue to hold these rights.

*Second*, Plaintiff points to the financial results in Televisa's annual forms 20-F and the certifications of them under the Sarbanes-Oxley Act.  *See* Compl. ¶¶ 75, 84, 93, 98, 101, 109.  But "[a]ccurate statements of past earnings figures are not themselves actionable under Section

10(b)."  *In re FBR Secs. Litig.*, 544 F. Supp. 2d 346, 355 (S.D.N.Y. 2008).  And even "accurately reported income derived from illegal sources is non-actionable despite a failure to disclose the illegality."  *See, e.g.*, *In re VEON Ltd., Sec. Litig.*, No. 15 Civ. 8672, 2017 WL 4162342, at *6 (S.D.N.Y. Sept. 19, 2017); *In re Marsh & McLennan*, 501 F. Supp. 2d at 470.

*Third*, similarly misplaced is Plaintiff's attempt to suggest falsity based on the statements in Televisa's Forms 20-F about its internal controls, such as that management had "concluded that the Company's internal control over financial reporting was effective."  *See* Compl. ¶¶ 76-79, 85-86, 89, 94-95, 102-03, 106, 110-11, 115.  There is no allegation that management had not so concluded at the time those statements were made.  And the statements themselves reflect the bases upon which management so concluded, and there is no allegation that any of those stated bases was false.  *See In re Banco Bradesco*, 227 F. Supp. 3d at 648 (statement of adequacy of internal controls does not become false or misleading because there were bribes; "the statements do not purport to guarantee that [the internal] controls will perform perfectly in every instance"); *In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 359-60 (S.D.N.Y. 2015) ("Even if [defendants] were engaging in bribery," that would not mean there were "flawed internal controls").  Moreover, as noted above, the very auditor statement and disclosures that the Amended Complaint cites make clear that the particular internal control weaknesses did *not* result in any false financial statements.  *See* p. 13, *supra*.

And Plaintiff's rank speculation that the disclosure by Televisa in January 2018 of particular "material weaknesses" in "internal controls" must have been the result of uncovering bribes (*see, e.g.*, Compl. ¶¶ 20, 24-26) has no support in particularized facts — and, indeed, is *refuted* by the very *next sentence* of that same 2018 disclosure: "There is no indication that any of these deficiencies resulted in improper activities."  Ex. J (Grupo Televisa, S.A.B. Report of

33

Foreign Issuer on Form 6-K, at 2 (Jan. 26, 2018)).  Plaintiff's fanciful yarn (citing nothing) that "[w]hat this means in lay terms" is that "defendants had authorized one or more individuals to carry out the transfers of money to make bribery payments and then cover up or conceal the nature of the payments to avoid detection" (Compl. ¶ 139) is just that: pure fiction.

*Fourth*, Plaintiff's various references to Televisa's code of ethics (Compl. ¶¶ 87-88, 96-97, 99, 104-05, 107, 112-13, 116) are likewise unavailing as a matter of law.  "Corporate codes of conduct are rarely actionable," because they are generally couched in "aspirational" qualifiers. *Barrett* v. *PJT Partners, Inc.*, No. 16 Civ. 2841, 2017 WL 3995606, at *5 (S.D.N.Y. Sept. 8, 2017); *see also In re Banco Bradesco*, 277 F. Supp. 3d at 647 (noting that "general statements about . . . compliance with ethical norms" are "quintessential examples" of "inactionable 'puffery'"); *In re Braskem*, 246 F. Supp. 3d at 754.  Televisa's code of ethics falls squarely in this inactionable category, as it is explicitly couched in words of aspiration:  "This Code sets out the Company's corporate *aspirations*"; "[w]e *wish* to succeed based on our merits, and not because we have paid or given something of value illegally," and the like.  Ex. K (Code of Ethics of Grupo Televisa, S.A.B. and Subsidiaries, at 1, 7 (June 2012)) (emphasis added).

*Finally*, Plaintiff points to two news articles that purport to quote Televisa spokesmen to the effect that Televisa did not know of or condone any bribe.  Compl. ¶¶ 108, 118.  As to Compl. ¶ 108, newspaper attributions to unnamed company spokesmen are not actionable.  *See In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 265 (2d Cir. 1993).  But more fundamentally, these statements would be inactionable because they are not material.

"The 'materiality hurdle' is . . . a meaningful pleading obstacle."  *Braskem*, 246 F. Supp. 3d at 753 (quoting *In re ProShares Trust Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013)).  And the alleged bribe in this case — even if properly pleaded and even were there a required "duty to disclose" — is

a far cry from the extensive bribery schemes that courts have deemed to satisfy the materiality prong on a motion to dismiss. *Cf. In re Banco Bradesco*, 277 F. Supp. 3d at 610-19 (broad-ranging bribery scheme in which CEO and Executive Chairman of board were criminally indicted for bribes aimed at procuring over $1 billion in illegitimate tax benefits); *In re Braskem*, 246 F. Supp. 3d at 749 (company pleaded guilty in federal court to felony in "a broad-ranging bribery scheme" to cause government officials to provide key raw ingredient at below-market prices).

Here, by contrast:

- No proceeding of any nature is claimed to have been brought — criminal or civil — against Televisa, its Swiss subsidiary, or any of their personnel by any government — U.S. or Swiss — or for that matter by FIFA itself.

- There is no claim that Televisa does not continue to hold the World Cup broadcast rights it acquired, which run all the way through World Cup 2030.

- As to Televisa, the allegation is of a single payment of $7.25 million that is claimed to have been used by Torneos as part of a bribe (Compl. ¶ 8) — a far cry from the broad-ranging schemes in the cases discussed above where materiality was deemed satisfied for purposes of a motion to dismiss.

- An investigation by outside counsel had long since concluded that Televisa, in fact, had *not* knowingly been involved in any such bribe. Ex. B (2017 Form 20-F, at 137). It can hardly be contended that it would be "material" — or truthful — for Televisa to have "disclosed" the contrary.

In short, even if the bribery denials alleged in paragraphs 108 and 118 of the Amended Complaint had been false — which demonstrably, they were not — those statements would in any event be non-actionable because they are immaterial in these circumstances.

**POINT III**

**THE AMENDED COMPLAINT FAILS TO RAISE A STRONG INFERENCE OF SCIENTER.**

All else aside, the Amended Complaint must also be dismissed because it fails to allege — as required by the Reform Act — "with particularity facts giving rise to a strong inference" that defendants acted with scienter, *i.e.*, with intent "to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 313; *see* 15 U.S.C. § 78u-4(b)(2)(A). And this is the case with respect to each of Televisa and the two individual defendants. Under the Reform Act's "heightened pleading standards," *S. Cherry St., LLC* v. *Hennessee Grp. LLC*, 573 F.3d 98, 104 (2d Cir. 2009), the inference of scienter in a securities fraud case must be "more than merely plausible or reasonable — it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent," *id.* at 111 (quoting *Tellabs*, 551 U.S. at 314).

Thus — unlike the traditional rules of pleading — the Reform Act calls for a *balancing act*. As *Tellabs* makes clear, "to determine whether a complaint's scienter allegations" can survive a motion to dismiss, courts "must engage in a comparative evaluation," balancing the "inferences urged by the plaintiff" against "competing inferences rationally drawn" by defendant as to "nonculpable explanations for the defendant's conduct." *Tellabs*, 551 U.S. at 314; *see also S. Cherry*, 573 F.3d at 111. Only where the inference of scienter is "cogent and at least as compelling as any opposing inference of nonfraudulent intent" offered by defendant that a private securities fraud action can meet this "[e]xacting pleading requirement[]." *Tellabs*, 551 U.S. at 313, 314; *see also S. Cherry*, 573 F.3d at 111.

Here, Plaintiff's proposed inference of scienter is extremely weak. Before even considering whether it is outweighed by the inferences of non-culpable conduct, a plaintiff trying to satisfy its pleading burden of establishing a "cogent" inference of scienter must allege "facts" either (1) "showing that the defendants had both motive and opportunity to commit the fraud," or (2) "constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Stratte-McClure* v. *Morgan Stanley*, 776 F.3d 94, 106 (2d Cir. 2015). Plaintiff's allegations fall far short of either.

As to motive, Plaintiff alleges in purely conclusory fashion that defendants "had the motive and opportunity to commit the alleged fraud," Compl. ¶ 153, but fails to identify even a *single* factual allegation demonstrating any such motive or opportunity. *See, e.g.*, *Novak*, 216 F.3d at 311 (holding that "litigants . . . should not employ or rely on magic words such as 'motive and opportunity'" and must instead "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" (internal quotation marks omitted)). To the extent that Plaintiff's smattering of allegations as to the importance of World Cup broadcast rights to Televisa's financial success was intended by Plaintiff to try to satisfy motive, *see* p. 32, *supra*, those allegations are plainly insufficient. There is not a word in the Amended Complaint that anyone at Televisa or Mountrigi thought that a bribe was necessary in order to induce FIFA to enter into commercial agreements for broadcast of the World Cups in question.

In any event, Plaintiff cannot "proceed based on motives possessed by virtually all corporate insiders, including . . . the desire to maintain a high corporate credit rating or otherwise sustain 'the appearance of corporate profitability, or of the success of an investment.'" *Novak*, 216 F.3d at 307. Rather, Plaintiff must allege a "specific benefit that would inure to the

defendants" and "would not be either generalized to all corporate directors or beneficial to all shareholders." *Kalnit* v. *Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). Plaintiff has not done so. Manifestly, acquiring World Cup rights benefits all of Televisa's constituents — not just the two named individual defendants.

Plaintiff's failure to do so not only leaves it unable to rely on motive to demonstrate scienter, but also raises the bar for pleading scienter through evidence of conscious misbehavior or recklessness. For "if there is no motive," "the strength of the circumstantial allegations" regarding conscious misbehavior or recklessness "must be correspondingly greater." *ECA & Local 134*, 553 F.3d at 198-99; *see also Kalnit*, 264 F.3d at 143. That is a high bar. To demonstrate conscious misbehavior or recklessness, Plaintiff must allege facts that show "at the least, . . . an extreme departure from the standards of ordinary care . . . [such] that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *ECA & Local 134*, 553 F.3d at 198 (quoting *Novak*, 216 F.3d at 308-09). This is "not merely a heightened form of negligence," but rather, "a state of mind approximating actual intent." *Stratte-McClure*, 776 F.3d at 106. Plaintiff's allegations do not come close to meeting that bar.

*First*, the Amended Complaint does not even attempt to plead *any* individual defendant's state of mind. Instead, Plaintiff's scienter allegations are cast against defendants as a group — with no showing of what any particular defendant thought at any time. *See, e.g.*, Compl. ¶¶ 153-57. This defect is fatal. *See, e.g.*, *Stratte-McClure*, 776 F.3d at 100 (holding that to state a claim for securities fraud, "a plaintiff must allege that *each defendant* . . . 'made misstatements or omissions of material fact . . . with scienter'" (emphasis added)).

*Second*, Plaintiff's reliance on Burzaco's trial testimony as its primary evidence of scienter is plainly inadequate. As noted, that testimony was as follows: "[a]mong the three

partners, we made an agreement to distribute the burden of paying $15 million in bribes" to

"Julio Grondona," and the partners were "Teleglobo from Brazil and Televisa from Mexico,"

along with Torneos.  Ex. A (Transcript of Criminal Trial, at 489:9-15, *Napout*, No. 15-cr-252

(Nov. 15, 2017)).  No other detail was provided.  Burzaco did not say (1) who at Televisa

(whether Azcárraga or Folch or some other individual) entered into the agreement; (2) what the

terms of the agreement were; (3) when or where the agreement was reached; or (4) how the

agreement came to be.

No one contends that Mountrigi itself — let alone Televisa or the individuals — made

any bribe.  The essence of Plaintiff's claim is that Burzaco did so and used as part of that bribe

dollars provided by Mountrigi.  So the essence of the scienter issue is whether Televisa *knew* that

Burzaco was doing so, and then intended to deceive shareholders by not disclosing it.  And

Plaintiff's Amended Complaint totally fails to meet the Reform Act requisites to establish any

such scienter.  *See* 15 U.S.C. § 78u-4(b)(2)(A) (requiring that plaintiffs plead "facts giving rise to

a strong inference that the defendant acted with the required state of mind"); *Stratte-McClure* v.

*Morgan Stanley*, 776 F.3d at 106 (requiring that plaintiff "alleg[e] facts . . . constituting strong

circumstantial evidence of conscious misbehavior or recklessness" to meet the Reform Act

standard).  Nowhere do we find *any* specific allegations as to *who* at Televisa (or Mountrigi)

supposedly had such knowledge — Plaintiff advances only conclusory allegations.

In *In re Banco Bradesco*, the court held that similarly conclusory "blanket allegations that

payments were made by the Company 'to [Brazilian government officials]'" were insufficient to

give rise to a strong inference of scienter.  277 F. Supp. 3d at 632, 634-35; *see also Pope Invs. II

LLC* v. *Deheng Law Firm*, No. 10 Civ. 6608, 2011 WL 5837818, at *5-6 (Nov. 21, 2011).  And

rightly so.  The "omissions and ambiguities" in Burzaco's testimony "count against inferring

scienter," *Tellabs*, 551 U.S. at 326, and what is left — a bare assertion that Televisa entered into

an agreement to pay bribes — is totally devoid of the particularity required by the Reform Act's

"heightened pleading standards," *S. Cherry St.*, 573 F.3d at 104; *see also In re Banco Bradesco*,

277 F. Supp. 3d at 632.

 As in *In re Banco Bradesco*, there is no allegation that anyone at Mountrigi — much less

Televisa — paid bribes directly to FIFA officials, or that Mountrigi provided any so-called

"assistance" to Burzaco with knowledge of the allegedly illicit nature of the payments. *See In re*

*Banco Bradesco*, 277 F. Supp. 3d at 633-34. Rather, "as alleged, any unlawful dealings were

conducted on the side between [Burzaco] and [Grondona]." *Id.* at 635. As to the latter, while

Plaintiff attempts to portray the ledger entry as showing the illicit nature of the payment, Plaintiff

omits to disclose that the ledger's author expressly testified at trial that the ledger included

"legitimate payments and transactions." Ex. A (Transcript of Criminal Trial, at 2173:21, *Napout*,

No. 15-cr-252 (Nov. 29, 2017)). And even more fundamentally as to scienter, Plaintiff does not

allege that any defendant or anyone else at Televisa or Mountrigi was even *aware* of this ledger

entry, let alone connect the ledger entry to any culpable state of mind of anyone at Televisa or

Mountrigi.

 *Third*, even if one assumed counterfactually that Plaintiff had adequately pled scienter as to

*Mountrigi*, the fact that Mountrigi is a subsidiary of Televisa would not be sufficient to lead to the

conclusion that scienter had been adequately pled against *Televisa*. *See Chill* v. *General Elec. Co.*,

101 F.3d 263, 268 (2d Cir. 1996) ("[T]he district court's determination that the Kidder defendants

'arguably' had a motive does not necessarily mean that the parent company, GE, had any motive.

Ultimately, whether Kidder defrauded plaintiffs and whether its parent, GE, defrauded plaintiffs

are different questions.").  Again, the complaint is devoid of the particularized facts tying such hypothetical scienter on the part of Mountrigi to Televisa or Messrs. Azcárraga and Folch.

*Fourth*, Plaintiff's attempt to divine scienter from the fact that Televisa supposedly announced that the individual defendants were "stepping down" immediately upon the so-called "exposé" in the *New York Times* is pure conjecture that fails to square with the facts.  As noted above, (1) the "exposé" reported facts that had already been reported by *Reuters* ten months earlier, *see* pp. 11-12, *supra*; and (2) neither Azcárraga nor Folch "stepped down" — rather, as reflected in "legally required public disclosure documents" that may be considered on a motion to dismiss, *ATSI Commc'ns*, 493 F.3d at 98, they both continued at Televisa in central positions: Azcárraga as Executive Chairman of the company's Board *with direct responsibility for Televisa's soccer business*; and Folch as a board member, vice president of strategic planning, and now as head of Televisa's cable division, *see* pp. 11-12, *supra*.

*Fifth*, Plaintiff's allegations concerning Televisa's internal controls in no way support any inference of scienter.  Plaintiff appears to suggest that because the individual defendants "reviewed the Company's internal controls" and signed Sarbanes-Oxley certifications, they must have known about the material weaknesses in those controls — and thus, somehow had knowledge of the supposed bribery scheme.  Compl. ¶ 157.  But resort to such circular reasoning to find scienter on the basis of this vague, inchoate theory requires multiple leaps of faith unsupported by the Amended Complaint's allegations.  To begin, Plaintiff alleges no particularized facts to support its claims that the defendants: (1) prior to the 2018 disclosure had been aware of or recklessly disregarded the presence of material weaknesses in the company's internal controls; or (2) back in 2013, at the time of Burzaco's bribery of Grondona, were aware or recklessly disregarded that any such material weaknesses — if they then existed —  were

being used to cover up the company's involvement in a bribery scheme.  Compl. ¶ 72.  Nor can

Plaintiff succeed by claiming that defendants had "access to information" that would reveal such

a cover up: "[w]here plaintiffs contend defendants had access to contrary facts, they must

specifically identify the reports or statements containing this information."  *Novak*, 216 F.3d at

308; *accord Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital Inc.*, 531 F.3d

190, 196 (2d Cir. 2008); *San Leandro Emergency Med. Grp. Profit Sharing Plan* v. *Philip*

*Morris Cos.*, 75 F.3d 801, 810 (2d Cir. 1996).  Plaintiff does not even attempt to meet this

requirement.

     Plaintiff endeavors to prop up its accounting theory with the allegations that the "individual

defendants were top executives at the Company and led its day-to-day operations" and that they

"interacted with other sports executives at Torneos and the executives at Mountrigi alleged to be

involved in the FIFA bribes."  Compl. ¶ 157.  But "[c]ourts in this Circuit have long held that

accusations founded on nothing more than a defendant's corporate position are entitled to no

weight."  *Plumbers & Steamfitters Local 773 Pension Fund* v. *Canadian Imperial Bank of*

*Commerce*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010).  And the conclusory allegation that the

individual defendants "interacted" with Torneos are completely devoid of the particularity required

by the Reform Act, *see In re Banco Bradesco*, 277 F. Supp. 3d at 633-34, and there is no factual

allegation that any interaction was anything other than "routine and entirely lawful," *id.* at 634.

*     *     *

     Thus, Plaintiff has offered nothing even close to rising to the required cogent inference of

scienter on the part of Defendants.  But in any event, even if it had, any such inference would be

far outweighed by non-culpable inferences under the balancing test that *Tellabs* compels.  *See*

*Tellabs*, 551 U.S. at 314 (stating that courts "must consider . . . not only inferences urged by the

plaintiff . . . but also competing inferences rationally drawn from the facts alleged").  Here, the facts alleged give rise to a compelling inference of non-culpability, for the fundamental reason that no one at Televisa *believed* that the company or any of its employees, agents, or subsidiaries was involved in a bribery scheme.

As noted in the 2017 Form 20-F cited in the Amended Complaint, *see* Compl. ¶¶ 70, 142,[*] Televisa had long since retained outside counsel to conduct an internal investigation into Televisa's acquisition of the 2026 and 2030 World Cup broadcast rights, Ex. B (2017 Form 20-F, at 137) — a step that courts have repeatedly recognized "tends to undermine any inference of scienter" because it suggests that parties are "'endeavoring in good faith to ascertain and disclose'" potential violations or issues, *City of Brockton Ret. Sys.*, No. 15 Civ. 8672, 2014 WL 4832321, at *24 (S.D.N.Y. Sept. 19, 2017) (quoting *Slayton* v. *Am. Express Co.*, 604 F.3d 758, 777 (2d Cir. 2010)); *see also Slayton*, 604 F.3d at 777 ("Ordering an investigation . . . was 'a prudent course of action that weakens rather than strengthens an inference of scienter.'" (citation omitted)); *Fries* v. *N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 722 (S.D.N.Y. 2018); *In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 343 (S.D.N.Y. 2008).

Moreover, in response to the filing of this very lawsuit, Televisa disclosed that the investigation conducted by outside counsel had "uncovered no credible evidence that would form the basis for liability for Televisa or for any executive, employee, agent or subsidiary thereof," and in particular, that "Televisa itself made no payment to any FIFA person and in no way knew of, or condoned, any payment by any third party to any FIFA person."  Ex. B (2017 Form 20-F,

---

[*]     The court is entitled to consider the 2017 Form 20-F on this motion to dismiss because, *inter alia*, it is a "legally required public disclosure document[] filed with the SEC," was "incorporated into the complaint by reference," and was "possessed by or known to the plaintiff" and "relied [upon] in bringing the suit."  *In re Banco Bradesco*, 277 F. Supp. 3d at 629 (quoting *ATSI Commc'ns, Inc.*, 493 F.3d at 98).

at 137).  That conclusion powerfully undercuts any inference of scienter on the part of defendants.  *See In re Inv. Tech. Grp., Inc. Sec. Litig.*, No. 15 Civ. 6369, 2018 WL 1449206, at *6 (S.D.N.Y. Mar. 23, 2018) ("If the internal investigation did not 'uncover any unlawful activity of a material proportion,' or if it revealed that the misconduct . . . had been resolved, then the more compelling inference to be drawn is an alternative non-fraudulent one." (quoting *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 407 (S.D.N.Y. 2016))).

These facts provide a compelling, "nonculpable explanation[] for the defendant[s'] conduct" — far more compelling than the entirely speculative and conjectural allegations of fraudulent intent advanced by Plaintiff.  *Tellabs*, 551 U.S. at 324.  This nonfraudulent inference is not only cogent and squarely supported by the very documents relied upon by Plaintiff, but also completely uncontradicted by any of Plaintiff's allegations — neither the conclusory testimony offered by Burzaco, nor the facially-neutral ledger entry or Criminal Information, nor Plaintiff's scattershot allegations regarding the *New York Times* "exposé" and the company's internal controls.

Viewing all of Plaintiff's allegations as a whole and considering the documents on which Plaintiff relies, Plaintiff has fallen far short of alleging "facts giving rise to a strong inference" of scienter that is "cogent" and "at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs*, 551 U.S. at 313.  Accordingly, dismissal is required for this reason as well.

## POINT IV

## PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20(a).

Plaintiff's claim under Section 20(a) against Azcárraga and Folch for control-person liability also must be dismissed.  A Section 20(a) claim requires "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud."  *ATSI Commc'ns Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).  Plaintiff has failed to

establish a primary violation by Televisa.  *See supra* Points I-III.  In addition, to successfully plead "culpable participation," Plaintiff must plead scienter with particularity.  *See Cohen* v. *Stevanovich*, 722 F. Supp. 2d 416, 435 (S.D.N.Y. 2010).  Plaintiff has entirely failed to plead scienter specifically as to Azcárraga or Folch, *see supra* Point III, and therefore has failed to allege that they were "culpable participant[s]" in the alleged fraud.

## CONCLUSION

The Amended Complaint amounts to nil.  It does not begin to come to grips with the pleading requirements of the Reform Act or Rule 9(b) as to the underlying claimed Televisa bribery upon which the entire Amended Complaint rests.  In addition, there was no duty to disclose or anything material to disclose; and there is no showing of a "strong inference" of scienter.

Defendants are well aware that "[t]he 'usual practice' in this Circuit upon granting a motion to dismiss is to permit amendment of the complaint."  *Lipow* v. *Net 1 UEPS Techs, Inc.*, 131 F. Supp. 3d 144, 173 (S.D.N.Y. 2015).  Nevertheless, "amendment is not warranted '[a]bsent some indication as to what [plaintiffs] might add to their complaint in order to make it viable.'"  *Horoshko* v. *Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004).  Here, Plaintiff has plumbed the depths of all bounds of conceivable imagination — all the way down to citing to the murder of a cable executive while riding a bicycle in Mexico, as if that showed there was a bribe.  There is no more to be fantasized.

The Amended Complaint fails.  Any further amendment of the Amended Complaint is futile.  This Court should not exercise its discretion in favor of giving Plaintiff license to plead yet again.  Dismissal should be with prejudice.

WACHTELL, LIPTON, ROSEN & KATZ

/s/ Herbert M. Wachtell
Herbert M. Wachtell
Ben M. Germana                    51 West 52nd Street
David B. Anders                   New York, New York 10019
                                  (212) 403-1000
        *Of Counsel**              HMWachtell@wlrk.com*

Dated: October 15, 2018           *Attorneys for Defendants*
New York, New York

---

\*      David Shieh and David E. Kirk, attorneys at the Firm not yet admitted to this Court, also participated in the preparation of this Memorandum.