ORIGINAL

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____            │
│ DATE FILED:   5/19/21            │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

In re GRUPO TELEVISA SECURITIES
LITIGATION

18 Civ. 1979 (LLS)

OPINION and ORDER
RE:  ROBBINS GELLER
RUDMAN & DOWD LLP

- - - - - - - - - - - - - - - - - -x

1.

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), it is the responsibility of the court to approve lead plaintiffs that it determines are "most capable of adequately representing the interests of class members" 15 U.S.C. 78u-4(a)(3)(B)(i), adopting the rebuttable presumption that the most adequate plaintiff is the one who "has the largest financial interest in the relief sought by the class." Id., § 4(a)(3)(B)(iii)(I)(bb).

One of the prerequisites of a class action is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Class certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Gen. Tel. Co. Sw. v. Falcon, 457 U.S. 147, 161 (1982). And "actual, not presumed, conformance

with Rule 23(a) remains . . . indispensable." <u>Id.</u> at 160. The Supreme Court has repeatedly held that the "class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." <u>E. Tex. Motor Freight Sys. v. Rodriguez</u>, 431 U.S. 395, 403 (1977).

During the class period plaintiff Colleges of Applied Arts and Technology Pension Plan ("CAAT") held a long position of Televisa ADR's on which it claims losses of $968,000. The other class members, at the same market prices, would have suffered losses of a similar nature, in smaller amounts.

But CAAT had something other class members did not. Through its investment in Arrowstreet (Canada) Global World Alpha Extension Fund I, which had shorted Televisa's ADR's, CAAT's share had a short position of 460,710 ADR's (437,633 for the 3-months) totaling over $10.94 million, roughly three times what CAAT had lost in its own long position.*

The extraordinary circumstance that CAAT's interest in the short sales by Arrowstreet could enrich CAAT's overall economic position more than it was injured by large losses in CAAT's own

---

* Robbins Geller argues that covering earlier unsuccessful short sales greatly diminished – or exceeded – Arrowstreet's later gains, reducing CAAT's actual net profits from Arrowstreet's short sales of Grupo to little or nothing. (p. 16 of its May 10, 2021 opp'n brief) The time to make that argument was in May, 2018, as part of CAAT's application for appointment as Lead Plaintiff.

long holdings of Televisa ADR's was certainly unique among the candidates for Lead Plaintiff.

2.

As experienced practitioners of securities law, Robbins Geller is well familiar with the pervading principle that it is fraudulent to "omit to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading . . . ." E.g., PSLRA, 15 U.S.C. § 77l(a)(2).

Yet, when Robbins Geller signed and filed its May 4, 2018 Memorandum in support of CAAT's motion for appointment "as Lead Plaintiff and approval of selection of counsel" (i.e. Robbins Geller), it made no mention whatever of CAAT's dramatic good fortune in Arrowstreet's short sales of Televisa. What it stated was only (pp. 5-6):

> "Typicality 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Sgalambo v. McKenzie, 268 F.R.D. 170, 173-74 (S.D.N.Y. 2010); see also Fed. R. Civ. P. 23(a)(3). "'The adequacy requirement is satisfied where the proposed Lead Plaintiff does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the

class ....'" <u>Sgalambo</u>, 268 F.R.D. at 174 (citation omitted); <u>see also</u> Fed. R. Civ. P. 23(a)(4).

Here, CAAT's claims are typical because, like all members of the putative class, it purchased Televisa ADRs during the Class Period at prices artificially inflated by defendants' materially false and misleading statements and suffered damages when the truth was revealed. CAAT's claims therefore arise from the same course of events as all class members and will require similar (if not identical) legal arguments in order to prove defendants' liability. Thus, CAAT satisfies the typicality requirements of Rule 23(a)(3). See <u>Boland</u>, ECF No. 24 at 3-4 (finding movant's claims typical to those of the other class members "since, 'like all members of the putative class, it purchased [corporate defendant's] ADRs during the Class Period at prices artificially inflated by defendants' materially false and misleading statements and suffered damages when the truth was revealed.'").

CAAT is also an adequate representative for the proposed class. Its substantial financial interest in the outcome of the Action demonstrates that its interests are aligned with those of the class.

Robbins Geller's presentation was successful. The Court appointed CAAT as Lead Plaintiff on May 17, 2018, and appointed Robbins Geller to the lucrative position of Lead Counsel.

Two years later, when CAAT's investment in the Arrowstreet fund whose profitable short sales of Televisa fortuitously surfaced, CAAT was revealed to be remarkably atypical of the class, and was deposed as Lead Plaintiff.

3.

Robbins Geller earnestly argues that it did not disclose to the Court CAAT's returns from its Arrowstreet investment because

they are immaterial. They arise from transactions in which CAAT itself did not participate, from Arrowstreet's independent investment decisions which CAAT had nothing to do with, and in "units" of Arrowstreet's portfolio whose losses in other holdings might more than offset the gains from Televisa's short sales, resulting in no net gain to CAAT. Robbins Geller and its expert cite cases disallowing such "third party" transactions from consideration in calculations of damages and other settings, and proclaim Robbins Gellers's good faith in omitting any mention of the thus irrelevant, remote matter of the short sales of Televisa securities in CAAT's investment in the Arrowstreet fund.

Those arguments may apply when the issue, as in the cases Robbins Geller and its expert cites, is about legal title or property rights in the claims, or of standing to sue for losses, or of "determining how best to calculate compensable losses." E.g., In re Vivendi Universal, S.A. Sec. Litig., 284 F.R.D. 144, 159 (S.D.N.Y. 2012).

They are far off the point when the issue is an applicant's qualifications to be Lead Plaintiff.

The primary issues in selection of a Lead Plaintiff are whether the applicant is a typical representative of the class of claimants, and who "suffered the greatest financial loss, providing an incentive to prosecute the case vigorously."

Ferrari v. Gisch, 225 F.R.D. 599 (C.D. Cal. 2004). Of those two standards, the one most emphasized in the PSLRA is typicality.

An applicant's collateral investments in the same issuer which produce results equaling or exceeding his losses are relevant and material to whether he is a typical class member. They raise directly the question whether he can be Lead Plaintiff. Such good fortune must be rare, and such a lucky candidate may not be eligible to represent a class of those who suffered only losses.

Because the undisclosed Arrowstreet short sales and large profits touch upon the key factor of typicality they were not only a material consideration in selecting a Lead Plaintiff but a predominant one.

Robbins Geller's decision not to disclose the Arrowstreet trades, and thus to assure the lucrative Lead Counsel position, was knowing and intentional. Robbins Geller omitted to state material facts necessary in order to make the statements in its memorandum (quoted above), in light of the circumstances under which they were made, not misleading.

In the world of securities law, that is a definition of fraud.

4.

Robbins Geller's willingness to submit so misleading a brief, in order to obtain a result for its client which it predictably might not obtain if all relevant facts were addressed, disqualifies it from continuing as counsel in this case.

Robbins Geller is dismissed from further service in this case, save facilitation of its replacement by its successor.

Further activities in the case are stayed for thirty days to allow the Lead Plaintiff to obtain other counsel.

So ordered.

Dated:  May 19, 2021
        New York, New York

                                    _Louis L. Stanton_
                                    LOUIS L. STANTON
                                         U.S.D.J.