# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re GRUPO TELEVISA SECURITIES
LITIGATION

Civil Action No. 1:18-cv-019179-LLS

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PROPOSED MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF ANDREW SPALDING

Herbert M. Wachtell
Ben M. Germana
David B. Anders
Adebola O. M. Olofin
Benjamin L. Levander
Daniel J. Harper
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
(212) 403-1000

*Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND .................................................................................................. 1

ARGUMENT........................................................................................................ 4

I.  Spalding's Opinions Exceed the Scope of Proper Expert Testimony................................ 5

    A.  Spalding Proffers Inadmissible Opinions on Issues of Law and State of Mind and Inadmissible Legal Conclusions Regarding the Facts of the Case.......................................................................................................... 5

    B.  Spalding Proffers Inadmissible Factual Narrative and Addresses Issues the Trier of Fact Is Capable of Understanding Without Expert Testimony................ 11

II.  Spalding Proffers Opinions Beyond the Scope of His Qualifications. ............................ 13

III.  Spalding's Opinions Are Not Reliable. ..................................................................... 16

IV.  Spalding's Proffered Testimony Should Be Excluded Under Rule 403.......................... 20

CONCLUSION.................................................................................................... 22

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amorgianos* v. *Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002)..........................................................................16, 17

*Andrews* v. *Metro-North Commuter R.R. Co.*,
882 F.2d 705 (2d Cir. 1989)..................................................................................12

*Bernstein* v. *Bernstein Litowitz Berger & Grossmann LLP*,
814 F.3d 132 (2d Cir. 2016)....................................................................................8

*Choi* v. *Tower Rsch. Cap. LLC*,
2 F.4th 10 (2d Cir. 2021) ...............................................................................4, 5, 9

*Daubert* v. *Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)..................................................................................1, 4, 20

*DiBella* v. *Hopkins*,
403 F.3d 102 (2d Cir. 2005)..................................................................................21

*Gen. Elec. Co.* v. *Joiner*,
522 U.S. 136 (1997)...............................................................................................16

*Golden* v. *OSG Ship Mgmt.*,
2017 WL 11454726 (S.D.N.Y. Oct. 12, 2017)....................................................16

*GST Telecommunications, Inc.* v. *Irwin*,
192 F.R.D. 109 (S.D.N.Y. 2000) ...................................................................10, 11

*Highland Cap. Mgmt., L.P.* v. *Schneider*,
379 F. Supp. 2d 461 (S.D.N.Y. 2005)........................................................9, 10, 11

*Highland Cap. Mgmt., L.P.* v. *Schneider*,
551 F. Supp. 2d 173 (S.D.N.Y. 2008)..................................................................5, 6

*In re AIG, Inc. 2008 Sec. Litig.*,
2015 WL 13648082 (S.D.N.Y. Mar. 19, 2015) .....................................................7

*In re Fosamax Prods. Liab. Litig.*,
645 F. Supp. 2d 164 (S.D.N.Y. 2009)....................................................................6

*In re IPO Sec. Litig.*,
174 F. Supp. 2d 61 (S.D.N.Y. 2001)......................................................................1

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   299 F. Supp. 3d 430 (S.D.N.Y. 2018)................................................................11, 12

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
   32 F. Supp. 3d 453 (S.D.N.Y. 2014)...............................................................................12

*In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*,
   341 F. Supp. 3d 213 (S.D.N.Y. 2018)...........................................................................16

*In re Rezulin Prods. Liab. Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004)................................................................ *passim*

*Kidder, Peabody & Co., Inc.* v. *IAG International Acceptance Group*,
   14 F. Supp. 2d 391 (S.D.N.Y. 1998)..........................................................................9, 10

*Kumho Tire Co.* v. *Carmichael*,
   526 U.S. 137 (1999)...............................................................................................4, 17, 18

*Marvel Characters, Inc.* v. *Kirby*,
   726 F.3d 119 (2d Cir. 2013).............................................................................................13

*Marx & Co.* v. *Diners' Club, Inc.*,
   550 F.2d 505 (2d Cir. 1977).............................................................................................13

*Nimely* v. *City of New York*,
   414 F.3d 381 (2d Cir. 2005)......................................................................... *passim*

*S.E.C.* v. *Lyon*,
   2009 WL 6325519 (S.D.N.Y. Mar. 18, 2009) ..............................................................21

*S.E.C.* v. *Tourre*,
   950 F. Supp. 2d 666 (S.D.N.Y. 2013)............................................................6, 7, 11, 16

*Shatkin* v. *McDonnell Douglas Corp.*,
   727 F.2d 202 (2d Cir. 1984)......................................................................................16, 17

*Sparta Com. Servs., Inc.* v. *DZ Bank*,
   No. 12 Civ 9220 (LLS), ECF No. 63,
   *aff'd*, 680 F. App'x 17 (2d Cir. 2017).............................................................................5

*Sparta Com. Servs., Inc.* v. *DZ Bank*,
   680 F. App'x 17 (2d Cir. 2017) ...................................................................................9, 13

*United States* v. *Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991)............................................................................................7

*United States* v. *Castillo*,
   924 F.2d 1227 (2d Cir. 1991)..........................................................................................22

*United States* v. *Long*,
   917 F.2d 691 (2d Cir. 1990)..........................................................................................22

*United States* v. *Stewart*,
   433 F.3d 273 (2d Cir. 2006)...........................................................................................9

**Statutes**

15 U.S.C. §§78dd-1, *et seq*. ("Foreign Corrupt Practices Act")........................................... *passim*

**Other Authorities**

Andrew Spalding, *A New Megasport Legacy: Host-Country Human Rights and*
   *Anti-Corruption Reforms* (Oxford Univ. Press 2022)...............................................18

Andrew Spalding, *Restoring Pre-Existing Compliance Through the FCPA Pilot*
   *Program*, 48 U. Tol. L. Rev. 519, 534 (2017) ...................................................8, 17

Fed. R. Evid. 403 ............................................................................................4, 20, 21

Fed. R. Evid. 702 ...........................................................................................4, 5, 16, 20

## PRELIMINARY STATEMENT

Lacking record evidence to support its case theory, Palm Tran has proffered the opinions of a law professor whose proposed expert testimony on "corruption and bribery" merely narrates Palm Tran's claimed version of the facts and presents ultimate legal conclusions.  But the rule prohibiting this sort of legal advocacy masquerading as expertise is "so well-established that it is often deemed a basic premise or assumption of evidence law."  *In re IPO Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (citation omitted).  The proposed testimony of Palm Tran's purported expert witness, law professor Andrew Spalding, would usurp the role of the Court in instructing the jury as to the applicable law and the role of the jury in applying that law to the facts.  For that reason, Spalding's report is inadmissible as expert testimony.

Indeed, Spalding's proffered testimony suffers from several infirmities that *each* render it inadmissible under the Federal Rules of Evidence and the familiar *Daubert* standard.  *First*, Spalding violates the boundaries of proper expert testimony by opining on legal issues and serving as a vehicle for factual narrative.  *Second*, Spalding offers opinions far beyond the scope of his qualifications.  *Third*, neither Spalding's methodology nor his application thereof is reliable.  *Finally*, Spalding's opinions are significantly more prejudicial and confusing than probative.  Spalding's report therefore should be excluded in its entirety.

## BACKGROUND

This case concerns alleged violations of the federal securities laws.  Specifically, Palm Tran alleges that Defendants made statements regarding Televisa's acquisition of World Cup broadcasting rights, Televisa's Code of Ethics, and Televisa's internal controls over financial reporting that were false or misleading because Televisa allegedly engaged in an "off-book" scheme to "bribe FIFA executives to illegally obtain the [World Cup] broadcasting rights."

Compl. ¶¶ 6, 24.  And Palm Tran alleges that Defendants knew or recklessly disregarded that such statements were false or misleading.  Compl. ¶ 182.

Having failed to develop record evidence to support its allegations, Palm Tran instead has proffered the testimony of law professor Andrew Spalding, who purports to be an expert on "corruption and bribery."  *See* Ex. A (the "Spalding Rpt.").[1]  Spalding was ███████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

Spalding is a professor at the University of Richmond Law School ████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████  He serves as a senior editor of a blog on the Foreign Corrupt Practices Act ("FCPA"), and he founded a group of nine academics and three practitioners called the "Olympics Compliance Task Force."  ██████████████████████  Ex. C (*Meet the Team*, https://blog.richmond.edu/olympicscompliance/team).  ████████████████████████

████████████████████████████████████████████████████

---

[1] All exhibits cited in this memorandum are attached to the accompanying Declaration of Benjamin L. Levander submitted herewith (and are cited herein as "Ex. __," unless otherwise noted).

[2] Spalding's report does not contain page numbers, and its numbered paragraphs restart at 1 in each sub-section.  Accordingly, where relevant, Defendants provide both the PDF page number and the specific paragraph when citing to the report.

Palm Tran seeks to have Spalding testify to three sets of "fundamental conclusions." Spalding Rpt. at p. 48, ¶ 1.

*First*, relying on a hodgepodge of FCPA enforcement actions involving corrupt payments to government officials in Latin America — which have no connection to Televisa or this litigation — as well as several blog posts discussing FCPA compliance and the Department of Justice's *FCPA Resource Guide*, Spalding opines that ██████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████

*Second*, Spalding opines that — ██████████████████████████ ██████████████████████████████████████████ ██████████████████████████████

██████████████████████████

██████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████

██████████████████████

*Third*, Spalding opines that ████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Spalding also opines that ███████████████████████████████████

████████████████████████████████████████████

███████████████████████████

### ARGUMENT

The proposed testimony of Palm Tran's "corruption" expert is inadmissible and should be excluded in its entirety.  The proponent of expert testimony bears "the burden of establishing its admissibility by a preponderance of the evidence."  *Choi* v. *Tower Rsch. Cap. LLC*, 2 F.4th 10, 20 (2d Cir. 2021).  Federal Rule of Evidence 702 requires that an expert be "qualified . . . to testify as to a particular matter," apply "reliable data and methodology," and render opinions that will "assist the trier of fact."  *Nimely* v. *City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (citing Fed. R. Evid. 702).  Expert testimony is also subject to Rule 403 and thus should be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury," Fed. R. Evid. 403; *see Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) ("[T]he judge in weighing possible prejudice against probative force under Rule 403 . . . exercises [even] more control over experts than over lay witnesses." (citation omitted)).  Trial courts serve as "gatekeep[ers]" responsible for ensuring that an expert's testimony meets these requirements, *Daubert*, 509 U.S. at 597, and that such testimony demonstrates "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," *Kumho Tire Co.* v. *Carmichael*, 526 U.S. 137, 152 (1999).

Here, Spalding seeks to offer a potpourri of improper legal conclusions concerning record evidence, opinions as to Defendants' state of mind, and factual narratives.  He strays far beyond his limited area of expertise, uses unreliable sources and methods, and, to the extent his proposed

testimony is relevant at all, he offers testimony that is substantially more prejudicial, confusing, and misleading than probative.  The Court thus should exclude Spalding's expert report in its entirety.

## I.  Spalding's Opinions Exceed the Scope of Proper Expert Testimony.

An expert report that "functions as little more than a legal brief that parrots plaintiffs' arguments" is inadmissible under Rule 702.  *Choi*, 2 F.4th at 20.  As the Second Circuit reiterated last year, "[e]xpert testimony that usurps the role of the factfinder or that serves principally to advance legal arguments should be excluded."  *Id.* (affirming the exclusion of a law professor's expert report).

Here, Spalding's expert report — effectively a law professor's legal brief *barely* disguised as expert opinion — runs far afield of these basic requirements of expert testimony. Spalding's report violates the prohibitions against experts' (a) opining on issues of law, legal conclusions regarding the facts of the case, and various individuals' states of mind, and (b) acting as a narrator of the facts and addressing issues that the trier of fact is capable of understanding without an expert's help.  His proposed testimony thus grossly exceeds the scope of proper expert testimony and should be excluded.

### A.  Spalding Proffers Inadmissible Opinions on Issues of Law and State of Mind and Inadmissible Legal Conclusions Regarding the Facts of the Case.

Expert testimony that "usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it by definition does not aid the jury" and is thus inadmissible.  *Nimely*, 414 F.3d at 397 (internal quotation marks and citations omitted).  Similarly, as this Court has explained, "[a]n expert's 'belief about a party's state of mind is an improper subject for expert testimony and cannot be saved by couching his opinion as industry custom and practice.'"  *Sparta Com. Servs., Inc.* v. *DZ Bank*, No. 12 Civ. 9220 (LLS), ECF No. 63 at 4 (quoting *Highland Cap. Mgmt., L.P.* v. *Schneider*,

551 F. Supp. 2d 173, 182-83 (S.D.N.Y. 2008)), *aff'd*, 680 F. App'x 17, 19-20 (2d Cir. 2017).

Thus, "plaintiffs are precluded from offering expert opinion evidence . . . of the alleged motive,

intent or state of mind of defendants or others."  *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp.

2d 531, 547 (S.D.N.Y. 2004).

Spalding's report is littered with legal conclusions and state-of-mind testimony.  To

provide just a few representative examples, Spalding opines that:



These are plainly inappropriate subjects for expert testimony.  *See, e.g.*, *In re Fosamax Prods.

Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (granting motion to exclude expert

testimony regarding "knowledge, motivations, intent, state of mind, or purposes" of individuals

or entities because "expertise does not give [an expert] the ability to read minds"); *S.E.C.* v.

*Tourre*, 950 F. Supp. 2d 666, 681 (S.D.N.Y. 2013) ("[An individual's] state of mind is not a

proper subject of expert testimony.").  And Spalding's testimony is rendered no less improper by

his superficial attempts to "couch[] his opinion as 'industry custom and practice.'"  *Highland*,

551 F. Supp. 2d at 182-83.

Similarly, "testimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible, and may not be made so simply because it is presented in terms of industry practice." *United States* v. *Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991).  As the Court is well aware, Palm Tran contends (and for purposes of this motion Defendants assume *arguendo*) that the ultimate legal issues in this litigation include whether Defendants made statements regarding Televisa's acquisition of World Cup broadcasting rights, Televisa's Code of Ethics, and Televisa's internal controls over financial reporting that were knowingly or recklessly false in light of Defendants' alleged participation in a bribery scheme.  Spalding repeatedly opines as to these ultimate legal issues, ███████████████████████████████████████████

████████  Again, just a few representative examples:



These are ultimate *legal conclusions* based upon Spalding's view of the facts in this case and thus should be excluded.  *See, e.g.*, *Tourre*, 950 F. Supp. 2d at 678 ("No party would doubt . . . that an expert cannot testify as to whether the specific information at issue in a case is or is not 'material,'" and "[i]nserting the word 'economically' does not somehow transform what is a legal proposition and a finding of fact into an admissible opinion."); *In re AIG, Inc. 2008 Sec.*

*Litig.*, 2015 WL 13648082, at *1 n.2 (S.D.N.Y. Mar. 19, 2015) (excluding expert declaration of "leading national expert on class action law and practice" that consisted of "legal assertions" that were "disingenuously . . . proffered [as a] 'factual' demonstration").

More broadly, Spalding's entire discussion ███████████████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████ is a thinly veiled attempt to opine on the conduct required to comply with domestic law (*i.e.*, the FCPA). *See* Spalding Tr. at 307:12-23; *see also* Spalding Rpt. at pp. 10-22. Indeed, in his academic writing, Spalding has described the *FCPA Resource Guide* as a "soft law document" that "describes the enforcement agencies' views on *what the FCPA means*" and thereby "help[s] to fill [a] void" in authority created by the lack of case law interpreting the FCPA. Andrew Spalding, *Restoring Pre-Existing Compliance Through the FCPA Pilot Program*, 48 U. Tol. L. Rev. 519, 534 (2017) (emphasis added). Thus, Spalding here offers an opinion on a legal standard (the conduct required by the FCPA). Such expert testimony as to the meaning, enforcement, and requirements of domestic law is highly improper. *See, e.g.*, *Bernstein* v. *Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 144 (2d Cir. 2016) (noting "our longstanding rule that expert testimony on issues of domestic law is not to be considered").[3]

Worse, Spalding purports to apply these legal standards to the supposed facts of this case ████████████████████████████████████████ to conclude that ██████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████

---

[3] As discussed below, Spalding's testimony based on the FCPA is also completely off-base: Even he concedes that the ████████████████████████████

███████████████████████████████████████████████

████████████[4]  Such testimony is far beyond the realm of proper expert testimony.  *See, e.g.*, *United States* v. *Stewart*, 433 F.3d 273, 311 (2d Cir. 2006) (holding that "[t]he proffered testimony regarding the legal principles underlying insider trading and their application to [the defendant's] trade had the potential to invade" both the role of the judge and the role of the factfinder and thus was properly excluded); *Highland Cap. Mgmt., L.P.* v. *Schneider*, 379 F. Supp. 2d 461, 470-72 (S.D.N.Y. 2005) (rejecting expert testimony regarding both general securities law principles and the application of such principles "to the facts of the instant case").

Indeed, the Second Circuit recently reiterated that expert testimony such as that of Spalding here is inadmissible.  *See Choi*, 2 F.4th at 20.  In *Choi*, plaintiffs proffered the report of a law professor — an expert in the regulation of commodities and futures trading — who sought to testify that defendant's trading of certain futures "was subject to the rules of" the Chicago Mercantile Exchange (CME).  *Id.*  The expert's report "identifie[d] a handful of rules" and pointed to various prior cases and regulatory documents to "interpret[] . . . those rules" and their application.  *Id.*  The Circuit affirmed the exclusion of the professor's testimony as "serv[ing] principally to advance legal arguments."  *Id.*  Similarly, in affirming this Court's exclusion of proffered expert testimony, the Circuit held that the expert's report regarding "banking industry standards and practices" was properly excluded because it was "replete with legal conclusions."  *Sparta Com. Servs., Inc.* v. *DZ Bank*, 680 F. App'x 17, 19-20 (2d Cir. 2017).

Moreover, courts in this District regularly exclude expert testimony similar to that offered by Spalding here.  For example, in *Kidder, Peabody & Co., Inc.* v. *IAG International Acceptance*

---

[4] It should be noted, however, that — as developed upon deposition — Spalding's "facts" were anything but such.  Nevertheless, for purposes of this motion, it is enough that Spalding's testimony is inadmissible.

*Group*, 14 F. Supp. 2d 391 (S.D.N.Y. 1998), the defendant to a malicious prosecution counterclaim proffered a detailed written expert report from the famed legal scholar Arthur Miller.  Professor Miller sought to testify (i) that "[defendant] had probable cause to believe [counterclaimant] breached its contract with [defendant]," (ii) "about the elements of New York contract and attachment law," and (iii) that "[defendant] acted reasonably and in good faith." *Id.* at 404.  The court precluded the proposed expert testimony in its entirety, holding that Professor Miller's testimony and report would usurp the role of the trial judge and of the jury and that "whether an individual acted knowingly, or willfully, or . . . with any other relevant state of mind" is not the proper subject of expert testimony. *Id.*; *see also, e.g.*, *Highland Cap. Mgmt.*, 379 F. Supp. 2d at 470, 473 (excluding expert report that included both a "discussion of the federal securities laws" and the expert's "view of the 'considerations' a prosecutor should take into account in prosecuting securities fraud violations"); *In re Rezulin*, 309 F. Supp. 2d at 558 (excluding proposed expert testimony regarding purported "standards of [industry] conduct" that were "at best thinly-disguised legal or quasi-legal principles" because such testimony "would encroach on the court's prerogative to instruct on the law").

Similarly, in *GST Telecommunications, Inc.* v. *Irwin*, 192 F.R.D. 109 (S.D.N.Y. 2000), the court excluded the testimony of plaintiffs' experts — who sought to testify to the conduct of various individuals involved in a business transaction — because the "standards of conduct espoused by the experts [were] not specialized knowledge" but rather were "in effect . . . legal conclusions on ethics and business oriented transactions." *Id.* at 110.  The court explained that "it would be inappropriate to consider the experts' personal assessments of the credibility of the situations involved, the sufficiency of the measures utilized in considering the business plans being pursued, the limits of unacceptable business risks, the evaluation of the means to deal with

the business choices presented . . . , and the impact of [certain] conduct and the significance thereof." *Id.* at 110-11.

So too here.  Spalding proffers inadmissible testimony consisting of opinions on legal issues and certain individuals' states of mind, as well as legal conclusions thinly veiled as standards of conduct.  Accordingly, Spalding's testimony and report should be excluded.

### B.     Spalding Proffers Inadmissible Factual Narrative and Addresses Issues the Trier of Fact Is Capable of Understanding Without Expert Testimony.

Spalding's report is also improper because it serves as a vehicle for a lengthy factual narrative and addresses issues that require no expertise.  It is "inappropriate for experts to become a vehicle for factual narrative" because "[a]cting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise" and "may easily invade the province of the jury." *Tourre*, 950 F. Supp. 2d at 675.  Further, "[m]ere narration . . . fails to fulfill *Daubert*'s most basic requirements" because it neither "convey[s] opinions based on an expert's knowledge and expertise" nor is "traceable to a reliable methodology." *Id.*  Thus, although an expert may rely on facts or other data in evidence when constructing an expert report, a party may not present an expert "for the purpose of constructing a factual narrative based upon record evidence." *Highland Cap. Mgmt.*, 379 F. Supp. 2d at 469.

Here, much of Spalding's report consists of mere narration of Palm Tran's preferred version of the facts — interspersed, of course, with related (and inadmissible) conclusions of law.  For example, ██████████████████████████████████
█████████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████

It is well established that such testimony is improper and should be excluded.  *See, e.g.*, *In re Rezulin*, 309 F. Supp. 2d at 551 (excluding testimony that was "merely a narrative of the case which a juror is equally capable of constructing" (internal quotation marks omitted)); *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 32 F. Supp. 3d 453, 461-62 (S.D.N.Y. 2014) (excluding testimony that merely summarized findings of audit opinions, facts provided by the party proffering the expert, and the contents of other documents on the record); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 583-84 (S.D.N.Y. 2018) (excluding report of Nobel Prize-winning economist who offered "opinions that purport[ed] to interpret documents like trader communications, government reports, and orders issued by regulatory authorities" because "the documents he purports to interpret are equally understandable by the trier of fact"). Rather, the documents and testimony that Spalding purports to interpret, "to the extent [they are] admissible, [are] properly presented through percipient witnesses and documentary evidence," not the narration of an expert.  *In re Rezulin*, 309 F. Supp. 2d at 551; *see also LIBOR*, 299 F. Supp. 3d at 490 (noting "heightened" concern regarding factual narration where, as here, the expert's report "offers no explanation of how the communications [and other facts] she reviewed were selected").

More broadly, "[f]or an expert's testimony to be admissible," it must *not* "be directed to . . . lay matters which a jury is capable of understanding and deciding without the expert's help." *Andrews* v. *Metro-North Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989); *see also, e.g.*, *In re Rezulin*, 309 F. Supp. 2d at 546.  Thus, just as Spalding's factual narrative of cherry-picked documents and testimony from this litigation is improper, so too is his description of unrelated,

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████████████████████████████████   Palm Tran had the ability to (and did) ask the

numerous fact witnesses it deposed about this unrelated prior alleged misconduct by certain

individuals affiliated with FIFA.  *Compare, e.g.*, █████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████   Here, "to the extent █████████████████

███████████████████████████████   is admissible," such material "is properly

presented through percipient witnesses and documentary evidence."  *In re Rezulin*, 309 F. Supp.

2d at 551; *see also Marvel Characters, Inc.* v. *Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) ("The

appropriate way to adduce factual details of specific past events is, where possible, through

persons who witnessed those events.").

*     *     *

Each section and each purported expert opinion of Spalding's report consists of improper

legal conclusions, improper factual narrative, or both.  Spalding offers a legal brief barely

disguised as an expert report, and his testimony therefore should be excluded in its entirety.

## II.    Spalding Proffers Opinions Beyond the Scope of His Qualifications.

Significant portions of Spalding's proffered testimony suffer from the additional defect

that Spalding seeks to opine on topics as to which he has no discernible expertise.  As the Second

Circuit explained in affirming this Court's exclusion of an expert's report and testimony, "[a]

district court properly rejects an expert's testimony when the testimony involves qualitative

opinions about an area outside the expert's field of expertise."  *Sparta Com. Servs.*, 680 F. App'x

at 19-20; *see also, e.g.*, *Marx & Co.* v. *Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977)

- 13 -

(rejecting expert testimony in part because it "concern[ed] matters outside [the expert's] area of expertise").

Spalding is a law professor at the University of Richmond Law School whose ████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████ He also edits a blog on the FCPA and founded a group of nine academics and three practitioners called the "Olympics Compliance Task Force." ████████████ *see* Ex. C (*Meet the Team*, https://blog.richmond.edu/olympicscompliance/team). ████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████

Yet, Spalding proffers expert testimony that far outstrips his expertise.  A few, non-exhaustive examples illustrate the issue.

Spalding seeks to opine that ██████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████

Similarly, ██████████████████████████████████████████████ ██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Spalding's proffered testimony that the ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

Further, Spalding seeks to opine that ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ Spalding cannot offer this

testimony because he is plainly out of his depth.  Again, Spalding has no background in ██████

█████████████████████████████████, or any other expertise that would allow

him to understand █████████████████████ any better than an average juror.

For each of these proffered opinions (and others like them), the key issue for purposes of

this motion is not that Spalding is wrong (he is); the fundamental problem is that, under

Rule 702, Spalding cannot opine on matters as to which he has no specialized knowledge. *See,*

*e.g.*, *Tourre*, 950 F. Supp. 2d at 677-78 (expert's "expertise in the general area of structured

finance" did not qualify him to present expert testimony on "synthetic CDOs, a very specific

type of security"); *Golden* v. *OSG Ship Mgmt.*, 2017 WL 11454726, at *3 (S.D.N.Y. Oct. 12,

2017) (maritime consultant could not testify to whether the amount of weight plaintiff lifted was

excessive). The Court thus should exclude Spalding's testimony for the additional reason that

Spalding seeks to testify to matters well beyond the scope of his expertise.

## III.    Spalding's Opinions Are Not Reliable.

Spalding's report is also inadmissible because it is not "the product of reliable methods

reliably applied." *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*,

341 F. Supp. 3d 213, 239-40 (S.D.N.Y. 2018). "To warrant admissibility" under Rule 702, "it is

critical that an expert's analysis be reliable at every step." *Amorgianos* v. *Nat'l R.R. Passenger*

*Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). "[R]eliability within the meaning of Rule 702 requires

a sufficiently rigorous analytical connection between [an expert's] methodology and [his]

conclusions." *Nimely*, 414 F.3d at 396. Thus, "[a] court may conclude that there is simply too

great an analytical gap between the data and the opinion proffered." *Id.* (quoting *Gen. Elec. Co.*

v. *Joiner*, 522 U.S. 136, 146 (1997)); *see also Shatkin* v. *McDonnell Douglas Corp.*, 727 F.2d

202, 208 (2d Cir. 1984) (rejecting expert methodology based on an "apples and oranges"

comparison). Finally, courts must ensure that an expert "employs in the courtroom the same

level of intellectual rigor that characterizes the practice of an expert in the relevant field,"

*Nimely*, 414 F.3d at 396 (quoting *Kumho Tire*, 526 U.S. at 152).

To the extent Spalding's report could be said to employ *any* methodology (aside from

factual narrative and legal conclusion), his methods consist primarily of: ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████ .

Spalding's data and methodology are far from "reliable at every step." *Amorgianos*,

303 F.3d at 267.  Spalding ███████████████████████████

███████████████████████████████████████████

███████████████████████████████████

███████████████████████ But the legal requirements and risks

associated with dealing with a private enterprise like FIFA and those associated with dealing

with foreign government officials are an "apples and oranges" comparison.  *Shatkin*, 727 F.2d

at 208.

Spalding also ███████████████████████████

███████████████████████████ . In his academic

writing, Spalding has identified seven key categories of documents that shape anti-bribery

compliance and enforcement:  "U.S. Sentencing Guidelines, Delaware corporate law, federal

statutes governing business conduct, memoranda written by Deputy Attorneys General, the U.S.

Attorneys' Manual, the DoJ and SEC's FCPA guidance, and the settlement documents of

contemporary FCPA enforcement actions."  Spalding, *Restoring Pre-Existing Compliance*

- 17 -

*Through the FCPA Pilot Program*, 48 U. Tol. L. Rev. at 524.  Yet, for purposes of this litigation,

Spalding instead focuses on a different source: ████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

Similarly, *outside* of the courtroom, Spalding has written that "[a]nti-corruption

compliance is . . . pluralistic" and "there exists no single authoritative account of what constitutes

good compliance." Ex. E (Andrew Spalding, *A New Megasport Legacy: Host-Country Human

Rights and Anti-Corruption Reforms* at 68, 73 (Oxford Univ. Press 2022)).  But in this litigation,

he has adopted a far less "pluralistic" approach, opining that ████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████  Thus, Spalding does not appear to have

"employ[ed] in the courtroom the same level of intellectual rigor that characterizes [his]

practice" as a legal academic.  *Nimely*, 414 F.3d at 396 (quoting *Kumho Tire*, 526 U.S. at 152).[5]

Further, Spalding provides no basis for his assertion that ████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

_____

[5] Relatedly, Spalding cherry-picks ███████ from the sources he cites. ████████████████████ ████████████████████████████████ many of which implicate only interactions with foreign government officials or otherwise have no connection whatsoever to even Palm Tran's wildest allegations in this litigation. ████████████████████████████████████ █████████████████████████████████████████████████████.

██████████████████████████████████████████

████████ But "there is simply too great an analytical gap between the data" — *i.e.*, the existence of

these enforcement actions and publications — and "the opinion proffered" — *i.e.*, ████████

████████████████████████████████████████ *Nimely*, 414 F.3d

at 396 (citation omitted).  The "*ipse dixit* of the expert" is not enough to bridge the gap.  *Id.*

Moreover, ██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

Similarly, ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

Thus, Spalding's testimony should be excluded for the additional reason that it is not the product of reliable methods reliably applied.

## IV.    Spalding's Proffered Testimony Should Be Excluded Under Rule 403.

Even if Spalding's testimony could satisfy the requirements of Rule 702 (it cannot), the testimony should be excluded under Rule 403.  The Second Circuit and the Supreme Court have noted "the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations." *Nimely*, 414 F.3d at 397 (citing *Daubert*, 509 U.S. at 595).  Under Rule 403, a court may exclude even relevant and reliable expert testimony if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Spalding's proffered testimony here is substantially more prejudicial and confusing than probative.  Take, for example, his first set of conclusions — that ████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

███████████████████

But even to the extent Spalding's discussion of ███████████████████████
████████████████████████████████████████████████, the testimony

confuses the issues by incorrectly suggesting that the relevant standard in this litigation is

████████████████████████████████████████, rather than whether Defendants

knowingly made false statements regarding Televisa's dealings with FIFA.  Such misleading

testimony is regularly excluded under Rule 403.  *See, e.g.*, *DiBella* v. *Hopkins*, 403 F.3d 102,

121 (2d Cir. 2005) ("[T]he district court correctly concluded that [the expert's] testimony would

unnecessarily confuse the jury because the real issue in the case was not whether [a party] acted

ethically, but rather . . . whether the $50,000 was or was not a bribe, and whether [the party] did

or did not believe it was a bribe."); *In re Rezulin*, 309 F. Supp. 2d at 545 (proposed testimony

"would be likely unfairly to prejudice and confuse the trier by introducing the experts' opinions

and rhetoric concerning ethics as alternative and improper grounds for decision on bases other

than the pertinent legal standards"); *S.E.C.* v. *Lyon*, 2009 WL 6325519, at *1 (S.D.N.Y. Mar. 18,

2009) (excluding proffered experts who sought to testify to confidentiality best practices — and

whether such practices were followed — as "irrelevant, prejudicial, and . . . far more likely to

confuse or mislead a jury than to assist them" in a securities fraud and insider trading litigation).

Further, Spalding's ██████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████ Such

expert testimony seeking to paint defendants guilty based on the conduct of others cannot satisfy Rule 403, and thus should be excluded. *See, e.g.*, *United States* v. *Castillo*, 924 F.2d 1227, 1234 (2d Cir. 1991) ("[W]e take serious issue with the Government's use of an expert witness to propound the impermissible theory that appellants' guilt could be inferred from the behavior of unrelated persons."); *United States* v. *Long*, 917 F.2d 691, 702 (2d Cir. 1990) (holding that "generalized" expert testimony regarding methods used by organized crime that was "not directly related to the case at hand" was only marginally relevant and highly prejudicial and should have been excluded).

## CONCLUSION

For the foregoing reasons, the Court should exclude Spalding's expert testimony in its entirety.

Respectfully submitted,

*Of Counsel*:

Ben M. Germana
David B. Anders
Adebola O. M. Olofin
Benjamin L. Levander
Daniel J. Harper

Dated: August 4, 2022

/s/ Herbert M. Wachtell
Herbert M. Wachtell

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
(212) 403-1000

*Attorneys for Defendants*