**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re GRUPO TELEVISA SECURITIES
LITIGATION

Civil Action No. 18-cv-1979-LLS

**CLASS REPRESENTATIVE'S MEMORANDUM OF LAW IN SUPPORT OF
UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT; AND (II) APPROVAL OF NOTICE TO THE CLASS**

Boies Schiller Flexner LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Palm Tran, Inc.
Amalgamated Transit Union Local 1577
Pension Plan and the Class*

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ............................................................................................. 1

II.   HISTORY OF THE LITIGATION .................................................................................. 3

III.  NEGOTIATION OF SETTLEMENT ................................................................................ 6

IV.   SETTLEMENT TERMS ................................................................................................. 7

V.    PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW CLASS
      REPRESENTATIVE TO NOTIFY THE CLASS ............................................................. 8

      A.    The Rule 23(e)(2) Factors Are Satisfied.................................................. 11

            1.    Class Representative and Lead Counsel Have Adequately Represented the Class.... 11

            2.    The Proposed Settlement is the Result of Good Faith, Arm's Length Negotiations.. 12

            3.    The Relief Provided by the Settlement is Adequate when Weighed Against the Risks
                  of Litigation ......................................................................................... 13

            4.    The Proposed Method for Distributing Relief is Effective......................................... 16

            5.    Lead Counsel's Fee and Expense Request is Fair and Reasonable............................ 17

            6.    All Class Members Are Treated Equitably Relative to One Another ........................ 18

      B.    The Proposed Settlement Meets the *Grinnell* Factors ................................. 19

VI.   NOTICE TO THE CLASS SHOULD BE APPROVED ..................................................... 22

VII.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS.................................................... 23

VIII. CONCLUSION ............................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
 568 U.S. 455 (2013) ............................................................................................ 20

*Christine Asia Co., Ltd. v. Yun Ma*,
 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ................................................. 9, 20

*City of Providence v. Aeropostale, Inc.*,
 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x
 73 (2d Cir. 2015)................................................................................................ 13

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent., Inc.*,
 2021 WL 911216 (S.D.N.Y. Mar. 7, 2021) ...................................................... 12

*D'Amato v. Deutsche Bank*,
 236 F.3d 78 (2d Cir. 2001)........................................................................... 12, 20

*Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974)............................................................................. 10

*Erica John Fund, et al. v. Haliburton Co., et al.*,
 No. 02-cv-1152, ECF No. 844 (N.D. Tex. April 25, 2018) ................................ 17

*Hyland v. Navient Corp.*,
 48 F.4th 110 (2d Cir. 2022)............................................................................. 18

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
 298 F.R.D. 171 (S.D.N.Y. 2014)....................................................................... 11

*In re Agent Orange Prod. Liab. Litig.*,
 597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) .................. 21

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................................... 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .................................................... 22

*In re Gilat Satellite Networks, Ltd.*,
 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007)................................................. 22

*In re Glob. Crossing Sec. & ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004)................................................................. 10, 21

*In re GSE Bonds Antitrust Litig.*,
 414 F. Supp. 3d 686 (S.D.N.Y. 2019)............................................................... 19

*In re Indep. Energy Holdings PLC Sec. Litig.*,
 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ............................................... 21

*In re Initial Pub. Offering Sec. Litig.*,
 243 F.R.D. 79 (S.D.N.Y. 2007)....................................................................... 9, 10

*In re Initial Pub. Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009)........................................................................... 23

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010)................................................................... 13, 20

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ........................................................ 15

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997)..................................................................... 8, 11

*In re Novo Nordisk Sec. Litig.*,
  No. 17-cv-209, ECF No. 361 (D.N.J. July 13, 2022)......................................... 17

*In re PaineWebber Ltd. P'ships Litig.*,
  147 F.3d 132 (2d Cir. 1998) ............................................................................... 8

*In re PPDAI Grp. Inc. Sec. Litig.*,
  2022 WL 198491 (E.D.N.Y. Jan. 21, 2022)............................................. 12, 14, 18

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995)........................................................................ 8

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) .................................................... 18

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999)................................................................... 13, 20

*In re Vitamin C Antitrust Litig.*,
  2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .................................................... 21

*In re Warner Chilcott Ltd. Sec. Litig.*,
  2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ................................................... 19

*Klein v. Altria Group Inc., et al.*,
  No. 20-cv-75, ECF No. 320 (E.D. Va. Mar. 31, 2022) ...................................... 17

*Landmen Partners Inc. v. Blackstone Grp. L.P.*,
  2013 WL 11330936 (S.D.N.Y. Dec. 18, 2013)................................................... 17

*Lea v. Tal Educ. Grp.*,
  2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ................................................... 15

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012)............................................................... 18

*New Jersey Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*,
  2016 WL 10980942 (S.D.N.Y. May 10, 2016).................................................. 17

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)...................................................................... 14, 21

*Nichols v. Noom, Inc.*,
  2022 WL 2705354 (S.D.N.Y. July 12, 2022) ................................................... 21

*Pantelyat v. Bank of Am., N.A.*,
  2019 WL 402854 (S.D.N.Y. Jan 31, 2019) ................................................................. 14

*Pirnik v. Fiat Chrysler Automobiles, N.V.*,
  No. 15-cv-7199, ECF No. 369 (S.D.N.Y. Sept. 5, 2019) .......................................... 17

*Rodriguez v. CPI Aerostructures, Inc.*,
  2021 WL 9032223 (E.D.N.Y. Nov. 10, 2021) ......................................................... 23

*Scheufele v. Tableau Software, Inc.*,
  2021 WL 9681019 (S.D.N.Y. Sept. 17, 2021) ......................................................... 17

*Thompson v. Metropolitan Life Ins. Co.*,
  216 F.R.D. 55 (S.D.N.Y. 2003) ................................................................................ 10

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ........................................................................ 8, 11, 23

*Weber v. Gov't Emps. Ins. Co.*,
  262 F.R.D. 431 (D.N.J. 2009) ................................................................................ 21

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ..................................................................................... 23

## Statutes

15 U.S.C. § 78 ............................................................................................................ 3, 18

28 U.S.C. § 1715 ............................................................................................................ 23

## Other Authorities

Janeen McIntosh, Svetlana Starykh, & Edward Flores, Recent Trends in Securities Class Action
  Litigation: 2022 Full-Year Review (NERA Jan. 24, 2023) ...................................... 14

Laarni T. Bulan & Laura E. Simmons, Securities Class Action Settlements—2021 Review and
  Analysis (Cornerstone Research Mar. 24, 2022) .................................................... 14

## Rules

Federal Rule of Civil Procedure 23 ..................................................................... passim

Class Representative Palm Tran, Inc. Amalgamated Transit Union Local 1577 Pension Plan ("Class Representative"), on behalf of a certified Class[1] of similarly situated investors, respectfully submits this memorandum of law in support of its unopposed motion for: (i) preliminary approval of the proposed $95 million Settlement[2] between Class Representative, on behalf of itself and the Class, and Defendants Grupo Televisa, S.A.B. ("Televisa"), Emilio Fernando Azcárraga Jean III, and Salvi Rafael Folch Viadero (collectively "Defendants" and together with Class Representative, the "Parties"); (ii) approval of the form and manner of the notice to be provided to the Class; and (iii) the scheduling of a hearing (the "Settlement Hearing") on the final approval of the Settlement, proposed Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and litigation expenses, and deadlines related thereto.    The Parties' agreed-upon proposed Order Granting Preliminary Approval Pursuant to Fed. R. Civ. P. 23(e)(1) and Permitting Notice to the Class (the "Preliminary Approval Order") is filed herewith.

## I.    PRELIMINARY STATEMENT

The Parties have negotiated, at arm's length and with the assistance of an experienced and neutral mediator, a proposed settlement of all claims in this Litigation for $95 million in cash. This resolution, which represents a substantial recovery that falls well within the range of possible approval, involved over four years of hard-fought litigation, including a motion to dismiss Class

---

[1] On June 29, 2020, the Court certified the Class, *see* ECF No. 146, and later clarified the Class definition as:

> [A]ll investors who had purchased or acquired Televisa [American Depositary Receipts] from April 11, 2013 to November 17, 2017, inclusive.

ECF No. 295 at 6.

[2] Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation of Settlement, as filed simultaneously herewith. All emphasis is added and all citations are omitted unless otherwise noted.

Representative's detailed and lengthy Amended Complaint; production and review of over 300,000 pages of documents from Defendants and numerous nonparties; 20 depositions of fact and expert witnesses; a contested motion for class certification; multiple appeals to the Second Circuit; a partially briefed motion for summary judgment; and a formal mediation session with an experienced mediator.   The terms of the Settlement are set forth in the Stipulation of Settlement (the "Stipulation"), filed simultaneously herewith.

Class Representative and Lead Counsel approve of the Settlement.  Class Representative is a union pension fund that actively oversaw the Litigation and authorized the Settlement.  Lead Counsel has substantial litigation experience, including securities litigation, and is recognized as a leader in the field.  Based upon their experience and evaluation of the facts and the applicable law, Lead Counsel and Class Representative submit that the proposed Settlement is fair, reasonable, adequate, and in the best interests of the Class.  This is especially so considering the risk that the Class might recover substantially less (or nothing) if the action were litigated through summary judgment, trial, and the likely post-trial motions and appeals that would follow (a process that could last several years).  Indeed, Class Representative faced risks concerning establishing liability and damages, including the risk that Defendants' motion for summary judgment or forthcoming motions to exclude Class Representative's experts would be granted in whole or in part.  Given these and other risks inherent in this complex securities class action, and the Settlement's substantial value, the Settlement represents an excellent result for the Class.  The proposed settlement resolves the Class's claims and satisfies all the criteria for preliminary settlement approval under federal law.

At this stage, the Court need only make a preliminary evaluation of the Settlement's fairness, such that the Class should be notified of the proposed Settlement.  Considering the

substantial recovery obtained, and the risks and burdens entailed in summary judgment and trial, Class Representative respectfully requests that the Court grant preliminary approval of the Settlement and enter the Preliminary Approval Order. That Order will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) approve the form and content of the Notice of Proposed Settlement of Class Action (the "Notice") and the Summary Notice of Proposed Settlement of Class Action (the "Summary Notice"), attached to the Stipulation as Exhibits A-1 and A-2; (iii) find that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances and comply with the notice requirements of Due Process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C § 78u–4, *et seq*.; and (iv) set a schedule and procedures for: disseminating the Notice and publication of the Summary Notice; objecting to the Settlement, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees and litigation expenses; submitting papers in support of final approval of the Settlement; and the Settlement Hearing.

## II.     HISTORY OF THE LITIGATION

Former Lead Plaintiff Colleges of Applied Arts & Technology Pension Plan ("CAAT") commenced this class action in 2018, represented by its counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller"). *See* ECF No. 1; ECF No. 32 (Amended Complaint). The Amended Complaint alleges that Defendants bribed officials of the Fédération Internationale de Football Association ("FIFA"), soccer's world governing body, to secure broadcasting rights to the world's most-televised sporting event—the FIFA World Cup—and touted their acquisition of those rights, all while failing to disclose their participation in the bribery scheme and emphasizing their commitment to ethical business practices. Class Representative alleges that Defendants' false

statements and/or omissions surrounding the bribery scheme caused Televisa ADRs to be traded at artificially inflated prices, and that when the truth regarding Defendants' participation in the bribery scheme was revealed during Alejandro Burzaco's—a business partner of Defendants'— testimony during criminal corruption trials of FIFA executives and other officials, the price of Televisa's ADRs dropped, causing damage to members of the Class.

Defendants deny all Class Representative's allegations.  They deny participating in a bribery scheme to secure World Cup broadcast rights.  Specifically, Defendants deny that they made any allegedly false or misleading statements, that any of the allegedly false and misleading statements were made with scienter, and that the Class Members, including Class Representative, suffered any damages whatsoever.  Thus, on October 15, 2018, Defendants moved to dismiss the Amended Complaint.  *See* ECF No. 37.  The Court denied the motion on March 25, 2019.  *See* ECF No. 47.  Defendants initially answered the Complaint on April 15, 2019, *see* ECF No. 52, and later amended their Answer on July 21, 2020, *see* ECF No. 150.

On October 30, 2019, CAAT sought to certify a class on behalf of "individuals and entities (except Defendants) that purchased or acquired Televisa ADRs from April 11, 2013, to January 25, 2018, inclusive." *See* ECF No. 32 at 10; ECF No. 75.  Although the Court preliminarily denied class certification on June 8, 2020 based on a finding that CAAT was an inadequate class representative, *see* ECF No. 134 at 11, the Court certified a class three weeks later on June 29, 2020, designating Palm Tran as Class Representative, *see* ECF No. 146.  Ultimately, the class period was set as April 11, 2013 to November 17, 2017, inclusive.  *See* ECF No. 295 at 6.

Thereafter, on April 12, 2021, Defendants moved to decertify the Class and to remove Palm Tran and Robbins Geller from the case.  *See* ECF No. 206.  Palm Tran—which, since being named Class Representative, had also been represented by Sugarman Susskind Braswell & Herrera as

liaison counsel, *see* ECF No. 210—retained Boies Schiller Flexner LLP ("BSF") in connection with Defendants' motion to remove it as Class Representative. *See* ECF No. 207. The Court granted Defendants' motion in part and removed Robbins Geller as counsel, but denied the motion to the extent it sought to decertify the Class and remove Palm Tran as Class Representative. *See* ECF Nos. 227 and 228. Robbins Geller, on behalf of itself and the Class, appealed the Court's order to the Second Circuit, which denied a petition for writ of mandamus following full briefing. *See* ECF No. 235. The Court subsequently appointed BSF as Lead Counsel for the Class on October 8, 2021. *See* ECF No. 250.

Beginning in 2019 and continuing through late 2022, the Parties conducted extensive fact and expert discovery. The Parties took 20 depositions, including of Class Representative, the individual Defendants and other high-ranking Televisa officers, and multiple experts, and produced and reviewed hundreds of thousands of pages of documents. Throughout expert discovery, the Parties exchanged affirmative and rebuttal expert reports of six expert witnesses which totaled over 1,000 pages.

Additionally, Class Representative's Counsel sought discovery in Switzerland from multiple entities, requesting documents related to the award of media rights for the 2018-2030 FIFA World Cups. A Swiss court granted the requested discovery in part and denied it in part, a decision later upheld by a Swiss appellate tribunal. The Parties also grappled with the United States' intervention in the case to stay Burzaco's deposition pending his forthcoming testimony in an ongoing criminal matter in the Eastern District of New York. Numerous discovery motions were litigated, including motions to compel and others concerning privilege issues.

In August 2022, following the completion of fact and expert discovery, Defendants moved for summary judgment on Class Representative's claims. *See* ECF No. 319. As Class

Representative prepared its opposition to Defendants' summary judgment motion, the Parties engaged in mediation. The Parties exchanged thorough mediation statements and engaged in a day-long mediation, as well as follow-up discussions, and reached a settlement in principle on November 15, 2022. On December 28, 2022, the Parties executed a memorandum of understanding ("MOU") memorializing their agreement to settle Class Representative's claims against Defendants and end the Litigation. The MOU included, among other things, the Parties' agreement to settle and dismiss the Litigation with prejudice and grant full mutual releases in return for a cash payment of $95 million by and/or on behalf of the Defendants for the benefit of the Class, subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court, which the Parties now seek.

## III.    NEGOTIATION OF SETTLEMENT

On October 10, 2022, the Parties engaged in a confidential mediation session before Robert A. Meyer, Esq., an experienced mediator in large and complex civil matters and class actions. In advance of that mediation, the Parties exchanged and provided to Mr. Meyer detailed mediation statements, along with supporting evidence. The Parties engaged in good faith negotiations but did not reach a settlement at that time, and the Litigation continued.

Mr. Meyer has noted experience in keeping negotiations alive even after the end of a mediation session. In the present matter, he continued to provide mediation support during October and early November 2022, urging the parties to find a reasonable, fair settlement. As a result of these continued arm's-length negotiations, and as explained above, the Parties reached an agreement in principle to resolve the case for $95 million. The confidential MOU memorializing the agreement was executed on December 28, 2022.

Considering the substantial benefit to the Class, and the significant costs and risks of further litigation—and in recognition of the fact that the proposed Settlement is the result of arm's-length

negotiations by experienced counsel overseen by a well-respected mediator—Class Representative respectfully submits that the proposed Settlement warrants preliminary approval so that notice can be provided to the Class.

## IV.    SETTLEMENT TERMS

The Settlement provides that Defendants will pay or cause to be paid $95 million into an Escrow Account, which amount plus accrued interest comprises the Settlement Fund. Stipulation, ¶¶1.34–1.35. Notice to the Class and the cost of settlement administration ("Notice and Administration Expenses") will be paid from the Settlement Fund. *Id.* ¶2.9. Subject to the Court's approval, Class Representative proposes that a nationally-recognized class action settlement administrator, Kroll Settlement Administration LLC ("Kroll"), be retained to administer the settlement. *Id.* ¶¶1.4, 5.1–5.13.

As set forth in the proposed Notice, Lead Counsel will submit an application in support of final approval of the Settlement and an application for an award of attorneys' fees on behalf of Class Representative's Counsel to be paid from the Settlement Fund in an amount not to exceed thirty percent (30%) of the Settlement Amount, and litigation costs, charges, and expenses in an amount not to exceed $3.5 million, plus interest accrued on both amounts at the same rate as earned by the Settlement Fund.

Following payment of Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses from the Settlement Fund, the remaining amount—the Net Settlement Fund—will be distributed to Authorized Claimants pursuant to the Court-approved Plan of Allocation. Any amount remaining following the initial distribution (as a result of uncashed or returned checks or otherwise) will be redistributed amongst Authorized Claimants who cashed the checks sent in the initial distribution and who would receive a minimum of $10.00. This redistribution process will continue until the balance remaining in the Net Settlement Fund is

de minimis, at which point the remainder of the Net Settlement Fund will be donated to an appropriate non-sectarian, non-profit charitable organization(s) serving the public interest and unaffiliated with the Parties or their counsel, as selected by Lead Counsel and approved by the Court. The proposed Plan of Allocation, which is set forth in the Notice, is comparable to plans of allocation approved in numerous other securities class actions.

The proposed Settlement is an excellent recovery on the claims asserted in this Litigation and is in all respects fair, adequate, reasonable, and in the best interests of the Class.

## V.   PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW CLASS REPRESENTATIVE TO NOTIFY THE CLASS

In the Second Circuit, there is a "'strong judicial policy in favor of settlements, particularly in the class action context.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of a class action settlement. Fed. R. Civ. P. 23(e) ("The claims . . . [of] a class proposed to be certified for purposes of settlement . . . may be settled . . . only with the court's approval."). The approval process typically takes place in two stages. *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). In the first stage, a court provides preliminary approval of the settlement and authorizes notice of the settlement be given to the class. *See id.* ("Preliminary approval of a proposed settlement is the first in a two–step process required before a class action may be settled."). That is what Class Representative seeks via this motion. In the second stage, which will come only if the Court grants this motion, the court holds a fairness hearing and "makes a final

determination as to whether the proposed settlement is fair, reasonable and adequate." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

Pursuant to Rule 23(e)(1), the preliminary approval of a settlement is appropriate where "the parties . . . show[] that the court will likely be able to:  (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(e)(2), which governs final approval, identifies factors that courts must consider in determining whether a class action settlement is "fair, reasonable, and adequate," including whether:

    a)  the class representatives and class counsel have adequately represented the class;

    b)  the proposal was negotiated at arm's length;

    c)  the relief provided for the class is adequate, taking into account:

        (i)  the costs, risks, and delay of trial and appeal;

        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)the terms of any proposed award of attorneys' fees, including timing of payment; and

        (iv)any agreement required to be identified under Rule 23(e)(3);[3] and

    d)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

---

[3] Here, the Parties have agreed that Defendants shall have the unilateral right to terminate the Settlement in the event that the number of ADRs held by Class Members who timely and validly request exclusion from the Class exceeds the number set forth in a confidential supplemental agreement executed between Defendants and Class Representative through their counsel (the "Supplemental Agreement").  *See* Stipulation ¶7.3.  "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

Overlapping with the factors listed in Rule 23(e) are the nine so-called *Grinnell* factors which the Second Circuit has counseled district courts to consider in determining whether to grant final approval to a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

The Rule 23(e) factors are not intended to "displace" any previously adopted factors but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.  Likewise, "[i]n finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'"  *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (quoting *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003)).

Here, Class Representative is requesting only that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlement.  As stated above, the proposed Settlement provides for a Settlement Fund of $95 million in cash, a substantial recovery that is unquestionably beneficial to the Class and plainly "within the range of possible approval."  *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. at 87 ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments

10

of the class and falls within the range of possible approval, preliminary approval is granted." (quoting *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. at 102)).

### A.   The Rule 23(e)(2) Factors Are Satisfied

#### 1.   Class Representative and Lead Counsel Have Adequately Represented the Class

As the Court found in granting class certification, *see* ECF No. 146, Class Representative's interests in this case are directly aligned with those of the other Class Members, *see Wal-Mart*, 396 F.3d at 113 ("[A]dequate representation of a particular claim is determined by the alignment of interests of class members."). Class Representative has demonstrated its ability and willingness to pursue the Litigation on the Class's behalf through its active involvement in the Litigation, including by searching for and producing documents, sitting for a deposition, reviewing numerous filings, staying apprised of developments in the case, participating in the mediation, and approving the Settlement. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 184 (S.D.N.Y. 2014) (finding that lead plaintiff had adequately represented the class where, similar to here, lead plaintiff spent time "reviewing pleadings, motions, and other documents; searching for and producing documents; traveling to New York to appear for a deposition; and communicating with counsel concerning the status of the case, and staying apprised of all developments in the case, including discussions about the [s]ettlement"). Class Representative and Lead Counsel zealously advocated for the interests of Televisa ADR purchasers and have obtained an excellent result. Class Representative's decision to settle this case was informed by a thorough investigation of the relevant claims; extensive fact and expert discovery; extensive briefing on motions to dismiss and for class certification, and discovery issues, as well as largely completing briefing in opposition to the motion for summary judgment; and participation in an extensive, arm's-length mediation. The Settlement

11

is demonstrably the product of well-informed negotiations and vigorous advocacy on behalf of ADR purchasers. Accordingly, this factor weighs in favor of approval.

### 2. The Proposed Settlement is the Result of Good Faith, Arm's Length Negotiations

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel. *See In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("A proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of arm's-length negotiations conducted by capable counsel, well-experienced in class action litigation arising under the federal securities laws."); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (stating that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"). As described above, the Settlement was reached only after extensive, arm's-length negotiations before Robert A. Meyer, Esq., a nationally recognized mediator experienced in securities class actions. After good faith, back-and-forth negotiations at one in-person/Zoom hybrid mediation session, which included the exchange of evidentiary submissions, and subsequent negotiations facilitated by Mr. Meyer, the parties reached an agreement-in-principle to settle the Litigation. Notably, several courts in this Circuit have approved settlements mediated by Mr. Meyer. *See, e.g., In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *8 (E.D.N.Y. Jan. 21, 2022) (granting final approval of settlement in securities class action where parties engaged Mr. Meyer as mediator); *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent., Inc.*, 2021 WL 911216, at *11 (S.D.N.Y. Mar. 7, 2021) (granting preliminary approval of settlement in securities class action where parties settled following mediation before Mr. Meyer).

In addition, the Parties and their counsel were knowledgeable about the strengths and

weaknesses of the case prior to reaching an agreement to settle.  Class Representative agreed to settle after fact and expert discovery was completed.  Defendants had filed a motion for summary judgment and Class Representative had substantially briefed but not yet filed its opposition to that motion. Assuming the Court denied Defendant's summary judgment motion, the only stage remaining in the litigation was trial.  Class Representative and Lead Counsel therefore had an adequate basis for assessing the strength of the Class's claims and Defendants' defenses when they agreed to the Settlement.  *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010) (granting final approval of settlement and concluding that "[t]he advanced stage of the litigation and extensive amount of discovery completed weigh heavily in favor of [settlement] approval" because "[t]he parties' counsel were clearly in a position to realistically evaluate the strengths and weaknesses of the claims, and to evaluate the fairness of the proposed [s]ettlement"); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281–82 (S.D.N.Y. 1999) (granting preliminary approval of settlement where, as here, plaintiffs "were well informed of the strengths and weaknesses of their claims" after a large number of "documents had been inspected, depositions and private sworn interviews had occurred, plaintiffs had briefed numerous motions, and plaintiffs had consulted extensively with numerous experts").  These circumstances confirm the fairness of the proposed Settlement.

### 3. The Relief Provided by the Settlement is Adequate when Weighed Against the Risks of Litigation

Courts consider both the best possible recovery and litigation risks in deciding "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case."  *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).  A court thus need only determine whether the settlement falls within a range of reasonableness that

13

"'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Pantelyat v. Bank of Am., N.A.*, 2019 WL 402854, at \*7 (S.D.N.Y. Jan 31, 2019) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

If approved, the Settlement will provide Class Members with $95 million in cash less reasonable attorneys' fees, litigation expenses, Notice and Administration Expenses, Taxes and Tax Expenses. The recovery obtained represents an outstanding result for the Class, amounting to approximately 27% of the maximum estimated recoverable damages—far exceeding the median and average recovery in securities fraud class actions generally. *See, e.g.*, Janeen McIntosh, Svetlana Starykh, & Edward Flores, Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review (NERA Jan. 24, 2023) (finding that "[t]he average settlement value" for securities class actions settled in 2022 was $38 million and further finding that the settlement value-to-investor losses ratio in cases asserting, as here, $200 million to $399 million in potential losses was 2.4% for cases filed and settled between December 2011 and December 2022); Laarni T. Bulan & Laura E. Simmons, Securities Class Action Settlements—2021 Review and Analysis (Cornerstone Research Mar. 24, 2022) (finding that "[t]he median settlement amount in 2021 was $8.3 million" and further finding that the settlement value-to-investor losses ratio in securities fraud class actions asserting, as here, potential damages in the range of $250 million to $499 million was 4.9% for cases settling in 2021).

Indeed, courts in and outside this District have approved settlements with much smaller monetary recoveries, especially when viewed as a percentage of potential recoverable damages. *See, e.g.*, *In re PPDAI Grp.*, 2022 WL 198491, at \*12 (approving settlement in securities class action where the settlement figure "represent[ed] 6.4% of the maximum estimated aggregate damages");

*Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at \*10 (S.D.N.Y. Nov. 30, 2021) (approving settlement in securities class action where the settlement figure "represent[ed] a recovery of 5.3% of the Settlement Class's maximum estimated damages"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2007 WL 313474, at \*10 (S.D.N.Y. Feb. 1, 2007) (approving settlement in securities class action where the settlement figure was approximately 6.25% of estimated damages and noting that this is at the "higher end of the range of reasonableness of recovery in class actions securities litigations"). !

Additionally, although Class Representative and Lead Counsel believe their case against Defendants is strong, they acknowledge that Defendants have presented substantial arguments disputing the necessary elements of falsity, scienter, materiality, and loss causation, as well as the amount of any damages.  For example, Defendants argued that Class Representative could not establish loss causation based on the circumstances and four-day length of the window used by Class Representative's expert in his event study.  Defendants also argued that Class Representative would have been unable to show that Defendants knowingly made false or misleading statements regarding their acquisition of the broadcasting rights to the World Cups at issue or that such alleged false or misleading statements were material.  And, while the class period has been set by the Court, Class Representative recognizes the risk that the class period could be changed at any point in the Litigation, including on appeal, which could result in substantially less damages to the Class.

Finally, Class Representative and Lead Counsel considered the significant risks that are presented by the uncertainty that arises in any jury trial, and that even a favorable verdict could be reduced or reversed in its entirety upon consideration of inevitable post-trial motions or on appeal.  Moreover, even if ultimately successful, the trial and appellate process would likely consume a minimum of two years, if not longer, thereby delaying further the recovery by Class Members of

damages they suffered beginning almost a decade ago.

The proposed Settlement balances the risks, costs, and delays inherent in complex securities class action cases such as this one.  When viewed in the context of these risks and the uncertainty of any future recovery from Defendants, the Settlement is extremely beneficial to the Class.

### 4.   The Proposed Method for Distributing Relief is Effective

The method of the proposed notice and claims administration process is effective.  This includes well-established, effective procedures for giving notice to potential Class Members, processing claims submitted by potential Class Members, and efficiently distributing the Net Settlement Fund.

The notice plan includes direct mailing of the Notice to all Class Members who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in the national edition of *The Wall Street Journal* and once over a national newswire service.  Additionally, a dedicated website will be created for the Settlement and will be updated regularly with information and key documents concerning the Settlement, including the Stipulation, Notice, Proof of Claim and Release form, Preliminary Approval Order and all briefs and declarations in support of the Settlement and an award of attorneys' fees and expenses.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate the amount of a claimant's claim amount pursuant to the Plan of Allocation.  The Plan of Allocation will govern how Class Members' claims will be calculated and how money will be distributed to Authorized Claimants.  The Plan of Allocation was prepared with the assistance of Class Representative's damages expert and is based primarily on the expert's damages analysis estimating the amount of alleged artificial inflation in the price of ADRs during the Class Period.

Finally, Kroll Settlement Administration LLC, the Claims Administrator selected by Lead

Counsel (subject to the Court's approval), will process claims under the guidance of the Parties, provide claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of its claims, and will distribute the Net Settlement Fund pursuant to the Court-approved Plan of Allocation.

### 5. Lead Counsel's Fee and Expense Request is Fair and Reasonable

As set forth in the Notice, Lead Counsel will apply for an award of attorneys' fees on behalf of Class Representative's Counsel of up to thirty percent (30%) of the Settlement Amount plus litigation expenses incurred in connection with the prosecution and resolution of this Litigation in an amount not to exceed $3.5 million, plus interest earned on both amounts at the same rate as earned by the Settlement Fund. This request is reasonable and within the range of fee awards in this Circuit and in comparable securities class actions. *See, e.g.*, *In re Novo Nordisk Sec. Litig.*, No. 17-cv-209, ECF No. 361 at 2 (D.N.J. July 13, 2022) (awarding 29% of $100 million securities class action settlement plus expenses); *Scheufele v. Tableau Software, Inc.*, 2021 WL 9681019, at *1 (S.D.N.Y. Sept. 17, 2021) (awarding 28% of $95 million securities class action settlement plus expenses); *Pirnik v. Fiat Chrysler Automobiles, N.V.*, No. 15-cv-7199, ECF No. 369 at 9 (S.D.N.Y. Sept. 5, 2019) (awarding 27% of $110 million securities class action settlement plus expenses); *New Jersey Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, 2016 WL 10980942, at *1-*2 (S.D.N.Y. May 10, 2016) (awarding 28% of $110 million securities class action settlement plus expenses); *Landmen Partners Inc. v. Blackstone Grp. L.P.*, 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 18, 2013) (awarding 33.33% of $85 million securities class action settlement plus expenses); *see also Klein v. Altria Group Inc., et al.*, No. 20-cv-75, ECF No. 320 at 10-11 (E.D. Va. Mar. 31, 2022) (awarding 30% of $90 million securities class action settlement plus expenses); *Erica John Fund, et al. v. Haliburton Co., et al.*, No. 02-cv-1152, ECF No. 844 at 35 (N.D. Tex. April 25, 2018)

(awarding 33.33% of $100 million securities class action settlement plus expenses).[4]

Lead Counsel also intends to apply to the Court for a service (incentive) award to Class Representative of no more than $10,000.00, as well as for costs and expenses pursuant to 15 U.S.C. § 78u-4(a)(4), for its representation of the Class. Such awards, which are permissible under Rule 23, *see Hyland v. Navient Corp.*, 48 F.4th 110, 124 (2d Cir. 2022), are "common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs," *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 624 (S.D.N.Y. 2012).

### 6. All Class Members Are Treated Equitably Relative to One Another

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). Here, the proposed Plan of Allocation is fair, reasonable, and adequate because it does not treat Class Representative or any other Class Member preferentially. The Plan of Allocation, which is set out in the Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants. Each Authorized Claimant, including Class Representative, will receive a *pro rata* distribution pursuant to the Plan of Allocation. Courts have approved this *pro rata* approach in other securities litigation. *See, e.g.*, *In re PPDAI Grp.*, 2022 WL 198491, at *13 (finding that a *pro rata* distribution plan "is appropriate and consistent with many other securities class action settlements' plans of allocation, and treats class members equitably relative to each other"); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020) (finding the requirement of Rule 23(e)(2)(D) met where, as here, "[l]ead [p]laintiff will receive precisely the same level of *pro rata* recovery (based on its

---

[4] A motion for final approval of the Settlement, including a motion for attorneys' fees and expenses, will be filed thirty-five (35) calendar days before the Settlement Hearing.

[r]ecognized [c]laim as calculated under the [p]lan of [a]llocation) as all other [c]lass [m]embers"). Class Representative, like all other Class Members, will be subject to the same formulas for distribution of the Net Settlement Fund.

### B.  The Proposed Settlement Meets the *Grinnell* Factors

*The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement.*  The first factor of the *Grinnell* analysis overlaps with the Rule 23(e)(2)(C)(i) factor of "the costs, risks, and delay of trial and appeal" addressed above. Fed. R. Civ. P. 23(e)(2)(C)(i); *see* §V.A.3., *supra*.  In addition, this case is reflective of the complexity, expense, and duration of securities class actions.  The Parties advanced numerous complex legal and factual issues under the federal securities laws, especially with respect to falsity, scienter, materiality, loss causation, and damages.

*The Reaction of the Class to the Settlement.*  Class Representative supports the Settlement based on its direct participation in the prosecution of the case and in the decision to enter into the Settlement.  This factor is otherwise inapplicable as notice regarding the Settlement has not yet been mailed or otherwise distributed to Class Members.  *See In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) (finding that "consideration of [the class reaction] factor is premature" when "no notice has been sent"); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 699 n.1 (S.D.N.Y. 2019) ("The Court need not consider *Grinnell* factor #2, which requires the Court to evaluate the reaction of the settlement class, because consideration of this factor is generally premature at the preliminary approval stage.").

*The Stage of the Proceedings.*  The volume and substance of Class Representative's and Lead Counsel's knowledge of the merits and potential weaknesses of the claims alleged are more than adequate to support the Settlement.  *See* §V.A.2., *supra*.  The voluminous discovery record of

over 300,000 pages of documents and 20 depositions, as well as the evidentiary submissions made during mediation, permitted Class Representative and Lead Counsel to intelligently weigh the strengths and weaknesses of the case and to engage in effective settlement discussions with Defendants. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. at 139; *In re Sumitomo Copper Litig.*, 189 F.R.D. at 281–82.

**The Risk of Establishing Liability and Damages.** The fourth *Grinnell* factor is addressed above under Rule 23(e)(2)(C)(i) ("costs, risks, and delay of trial and appeal"). For the same reasons explained above, Class Representative has satisfied the fourth *Grinnell* factor. *See* §V.A.3., *supra*.

**The Risks of Maintaining the Class Action through Trial.** Although the Class was certified in June 2020, the law concerning class certification in securities cases is often further refined over time, and this Court could have revisited certification at any time. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 482 n.11 (2013) ("Rule 23(c)(1)(C) continues to provide that a class-certification order 'may be altered or amended before final judgment.'" (quoting Fed. R. Civ. P. 23(c)(1)(C))); *Christine Asia Co.*, 2019 WL 5257534, at *13 (finding that this risk weighed in favor of final approval because "a class certification order may be altered or amended any time before a decision on the merits"). This presents a continuous risk that the case might not be maintained on a class-wide basis through trial, and/or that damages could be greatly reduced.

**Defendants' Ability to Withstand a Greater Judgment.** A court may also consider a defendant's ability to withstand a judgment greater than that secured by the proposed settlement, although this is not generally a determining factor. *See D'Amato*, 236 F.3d at 86 (upholding district court's conclusion that the while "defendants' ability to withstand a higher judgment weighed against the settlement," it did not alone "suggest that the settlement is unfair"). While Defendants here likely could withstand a judgment of more than $95 million, courts generally do not find the

ability of a defendant to pay a greater amount to be an impediment to settlement when the other *Grinnell* and Rule 23 factors favor the settlement. *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012) ("[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." (quoting *Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009))). This factor is therefore neutral. *See Nichols v. Noom, Inc.*, 2022 WL 2705354, at *10 (S.D.N.Y. July 12, 2022).

> ***The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.*** The adequacy of the amount achieved in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness"—a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman*, 464 F.2d at 693; *see also Glob. Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *3-*4 (S.D.N.Y. Sept. 29, 2003) ("Few cases tried before a jury result in a verdict awarding the full amount of damages claimed."). Here, the Settlement amount is about 27% of the Class expert's estimate of maximum recoverable damages, which well exceeds the median and average recovery in securities fraud class action cases. *See* §V.A.3., *supra*. The $95 million cash settlement is therefore an excellent recovery for the Class, and this factor

supports preliminary approval. *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010) (granting final approval of settlement whose "amount . . . far exceeds the national medians—in straight dollar terms and as a percentage of the recovery compared to the total alleged damages—for class action securities settlements after the passage of the PSLRA"); *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *12 (E.D.N.Y. Sept. 18, 2007) (finding settlement figure within the range of reasonableness where the figure exceeded historical median settlement amount and median settlement as a percentage of estimated damages).

In sum, all the Rule 23 and *Grinnell* factors weigh in favor of preliminary approval of the Settlement, with the possible exception of one factor that is neutral. Preliminary approval in these circumstances is entirely appropriate and warranted.

## VI. NOTICE TO THE CLASS SHOULD BE APPROVED

As outlined in the agreed-upon form of the proposed Preliminary Approval Order, and described above, Class Representative will notify Members of the Class by mailing the Notice and Proof of Claim and Release form to all Members of the Class who can be identified with reasonable effort, using multiple sources of data, including (i) the list of record holders that purchased Grupo Televisa ADRs during the Class Period provided or caused to be provided by Defendants (as required by ¶3.2 of the Stipulation) and (ii) proprietary lists maintained by the Claims Administrator of banks, brokers, and other nominees.

The Notice will advise the Members of the Class of the essential terms of the Settlement and provide information regarding Lead Counsel's application for an award of attorneys' fees and expenses. The Notice also will provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for both submitting valid and timely Proofs of Claim and Release pursuant to the proposed Plan of Allocation and objecting to the Settlement, the proposed Plan of Allocation, and/or the application for attorneys' fees and expenses. Further, the Notice will provide contact information

for the Claims Administrator and Lead Counsel and advise Class Members on how to obtain further information regarding the Settlement.

In addition to mailing the Notice and Proof of Claim and Release, the Claims Administrator will cause publication of a Summary Notice in the national edition of *The Wall Street Journal* and once over a national newswire service. Defendants will serve notice of the proposed Settlement on the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq*.

The form and manner of providing notice to the Class satisfy the requirements of Due Process, Federal Rule of Civil Procedure 23, and the PSLRA. Here, the manner of providing notice, which includes (i) individual notice by mail to all Members of the Class who can be reasonably identified, (ii) the creation of a dedicated website, and (iii) notices published in a national newspaper and over a newswire, represents the best notice practicable under the circumstances. *See, e.g.*, *Rodriguez v. CPI Aerostructures, Inc.*, 2021 WL 9032223, at *13 (E.D.N.Y. Nov. 10, 2021) (finding that notice plan similar to that proposed here was "reasonable and adequate" because the proposed notice was "detailed enough to inform the class members of their rights and obligations, and the proposed methods of notice, including publishing the summary notice in the *Wall Street Journal* and sending it once over a national newswire, are practical and likely to be effective in reaching the affected individuals"); *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 119–20 (S.D.N.Y. 2009) (same). In short, the Notice and Summary Notice satisfy all requirements of Due Process and Rule 23 because they "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)).

## VII.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Class Representative proposes the following schedule for the Settlement-related events in this case:

| Event | Proposed Due Date |
|---|---|
| Deadline for Defendants to provide or cause to be provided to the Claims Administrator a list in electronic format of record holders that purchased Grupo Televisa ADRs during the Class Period | 5 business days after entry of Preliminary Approval Order |
| Deadline for commencing mailing of the Notice and Proof of Claim and Release to the Class (the "Notice Date") | 20 calendar days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice | 7 calendar days after the Notice Date |
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation and Lead Counsel's application for attorneys' fees and expenses | 35 calendar days prior to Settlement Hearing |
| Deadline for Claims Administrator to receive Class Members' Requests for Exclusion | 30 calendar days prior to Settlement Hearing |
| Deadline for receipt of objections to final approval of Settlement, Plan of Allocation and Lead Counsel's application for attorneys' fees and expenses | 21 calendar days prior to Settlement Hearing |
| Deadline for Lead Counsel to serve on Defendants' Counsel and file with the Court proof, by affidavit or declaration, of mailing and publishing of the Summary Notice | At least 7 calendar days prior to Settlement Hearing |
| Deadline for filing reply papers regarding final approval of Settlement, Plan of Allocation and Lead Counsel's application for attorneys' fees and expenses | 7 calendar days prior to Settlement Hearing |
| Settlement Hearing | At the Court's convenience; Parties request 100 days after entry of the Preliminary Approval Order |
| Deadline for submitting Proofs of Claim and Release | 90 calendar days after the Notice Date |

## VIII.    CONCLUSION

Class Representative respectfully requests that the Court:  (i) preliminarily approve the Settlement; (ii) approve the proposed form and manner of notice to be given to the Class; and (iii) schedule a hearing on Class Representative's motion for final approval of the Settlement and Lead Counsel's application for an award of attorneys' fees and expenses.  The Parties' agreed-upon form of proposed Preliminary Approval Order and exhibits thereto (Notice of Proposed Settlement of Class Action, Summary Notice of Proposed Settlement of Class Action, Proof of Claim and Release Form, and Proposed Order and Final Judgment) are filed herewith.

Dated: February 28, 2023
New York, New York

Respectfully submitted,

/s/ *John T. Zach*
David Boies
David A. Barrett
Adam R. Shaw
John T. Zach
Lauren M. Goldman
Boies Schiller Flexner LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Palm Tran, Inc.*
*Amalgamated Transit Union Local*
*1577 Pension Plan and the Class*